[Crim. No. 1398. In Bank.—December 10, 1907.]

## THE PEOPLE, Respondent, v. WILLIAM HELM, Appellant.

CRIMINAL LAW—JURY—CHALLENGE FOR CAUSE—REVIEW OF ERRONEOUS RULING.—While it is true that the erroneous overruling of a good challenge for cause, thereby compelling the use of a peremptory challenge, is not prejudicial error where it is not made to appear that the challenger was obliged afterward to accept an objectionable juror without power to use a peremptory challenge upon him, it is equally true that where such a condition is shown to result the error became prejudicial if the defendant has been obliged to exhaust his peremptory challenges in relieving himself from jurors who should have been excused by the court under challenge for cause, and the rulings of the court upon such jurors are then the subject of review. It makes no difference in this respect that no challenges for cause were interposed by the defendant to any jurors called to the box after the exhaustion of his peremptory challenges had been forced by the improper rulings of the court upon his challenges for cause.

ID.—RIGHT TO UNBIASED JURORS—OPINION OF JUROR.—The right of a defendant in a criminal case to unbiased and unprejudiced jurors, as known to the common law, is still an inseparable right guaranteed by the constitution, subject to the sole modification created by section 1076 of the Penal Code, to the effect that where a juror has formed or expressed an opinion upon the matter to be submitted to him for consideration, and that opinion it is established was formed upon public rumor, statements in public journals, or common notoriety alone, he is not necessarily disqualified, provided that it is made to appear to the court upon his declaration under oath or otherwise that he can and will, notwithstanding such opinion, act impartially and fairly in deciding the questions to be submitted to him.

Id.—Public Rumor — Common Notoriety — Statements in Public Journals.—It is for the trial court in the first instance to determine, and it must be affirmatively made to appear when a juror is shown to have an opinion, that such opinion is founded upon public rumor, common notoriety, or statements in the public journals, and it must further be made to appear to the satisfaction in the first instance of the trial court that such opinion can and will be absolutely laid aside by the juror, and that so laying it aside he can and will act with strict fairness and impartiality.

Id.—Opinion that Disqualifies.—If it is not made to appear that the juror's opinion is based entirely upon one or all of the three sources of information above named, or if it is shown that his belief has its origin in any other source than one of the three enumerated, he is at once as thoroughly disqualified under the code as he would have been at common law.

Id.—Murder—Opinion as to Guilt of Other Crime.—Where a defendant on trial for a particular murder is also under public suspicion of having committed another murder, a juror who on his *voir dire* had stated that he held an opinion touching the defendant's guilt or innocence of the other murder may be asked by the defendant whether he did not believe the defendant guilty of the other murder, and if he so believed he had not formed an adverse opinion towards the defendant in the case on trial. Such questions are allowable both as tending to throw light upon the juror's condition of mind as to the matter under investigation and also for the purpose of determining whether to interpose a peremptory challenge.

Id.—Immaterial Evidence without Prejudice.—Where a witness for the prosecution has testified that he met the deceased on the day of the murder it is not prejudicial to the defendant to permit him to further state that the deceased told him he was unwell and was going to a certain place to see a doctor.

Id.—Opinion as to Size of Bicycle Tracks.—Where it was the contention of the prosecution that the defendant and an accomplice had ridden bicycles to the scene of the murder a witness who had taken measurements of the size of certain tracks made by bicycle wheels but who had lost the memorandum of the measurements may testify as to the width of the tracks.

Id.—Misconduct of District Attorney—Reference to Other Crime.—On a trial for murder it is improper for the district attorney in his argument to the jury to refer to another murder of which the defendant was suspected, as to which no evidence was introduced.

Id.—Information May Be Filed on Holiday.—The presentation of an information by the district attorney for filing and its reception and the placing of its file-mark thereon by the clerk of the court are purely ministerial acts and may be performed on a legal holiday.

Id.—Instruction as to Premeditation.—In a prosecution for murder, an instruction to the effect that there need be no appreciable space of time between the formation of the intent to kill and the act of

killing, should be given in the language indicated in *People* v. *Maughs*, 149 Cal. 253.

ID.—NOTICE OF CRIME—THEORY OF PROSECUTION—CONTRADICTORY INSTRUCTIONS.—Where the whole theory of the prosecution was that larceny was the motive of the murder the court should not have instructed the jury that the "prosecution did not claim that the homicide charged was committed in the perpetration or attempt to perpetrate another felony."

APPEAL from a judgment of the Superior Court of Fresno County, and from an order refusing a new trial. George E. Church, Judge.

The facts are stated in the opinion of the court.

Everts & Ewing, for Appellant.

U. S. Webb, Attorney-General, and George W. Jones, for Respondent.

HENSHAW, J.—Defendant was informed against by the district attorney of the county of Fresno for the crime of murder, was tried and found guilty of murder in the first degree. He moved for a new trial and in arrest of judgment, his motions were denied, and the judgment was pronounced, imposing the death penalty. From the judgment and order denying his motion for a new trial he prosecutes this appeal.

The defendant, with his brother, was accused of murdering a farmer and his wife who were camped by a roadside in the county of Fresno, shooting them both with a shotgun. The apparent motive of the crime was larceny. The evidence was circumstantial in its nature. Public feeling was much aroused by other crimes of violence which had been committed, and by another murder, that of a man named Jackson. Of the commission of these crimes this defendant was also suspected. The community, as was natural, was much exercised, and there was great prejudice against the defendant. It became a matter of difficulty, therefore, to secure upon the trial the fair and impartial jury to which every defendant is entitled. Some fifty-nine jurors called to the box were excused upon challenge for actual bias. Defendant's challenge to others upon the same ground was denied, and his counsel was obliged to interpose peremptory challenges to them. Defendant's per-

emptory challenges were thus exhausted when only eight
members of the jury had been obtained.  Three of the last
four were accepted by defendant without challenge for cause.
The fourth was challenged for cause and the challenge over-
ruled.  While it is true that the erroneous overruling of a
good challenge for cause, thereby compelling the use of a
peremptory challenge, is not prejudicial error where it is not
made to appear that the challenger was obliged afterward to
accept an objectionable juror, without power to use a per-
emptory challenge upon him, it is equally true that where
such a condition is shown to result, as here, the error at once
becomes prejudicial, if the defendant has been obliged to
exhaust his peremptory challenges in relieving himself from
jurors who should have been excused by the court under
challenge for cause, and the rulings of the court upon such
jurors become a most important matter of review.  It makes
no difference in this respect that no challenges for cause were
interposed by defendant to any jurors called to the box after
the exhaustion of his peremptory challenges had been forced
by the improper rulings of the court upon his challenges for
cause.  It may often happen that a juror most obnoxious to a
defendant may successfully pass examination upon his *voir
dire.*  That examination may disclose no ground for the in-
terposition of a challenge for cause.  Yet there may be some
reason known to the defendant which would make it most
prejudicial to him that the juror should be retained.  Even
more, the right to exercise peremptory challenges is absolute.
Such a challenge may be exercised upon the mere whim or
caprice of defendant; so that again we say that any rulings
of a court which compel a defendant to, exhaust his per-
emptory challenges and force him to accept jurors after his
challenges have been so exhausted, become the proper subject
of review.

The modification of the common-law rule which has been
worked by section 1076 of the Penal Code, has often been the
subject of consideration.  The common-law rule which de-
manded the strictest impartiality upon the part of each
individual juror, which declared that, one and all, should,
as between the crown and the defendant, "stand indifferent
as they stand unsworn," has, by the section before adverted
to, been subjected to an exceedingly narrow change.  Jurors

must still be indifferent and unbiased. Where, however, a
juror has formed or expressed an opinion upon the matter
to be submitted to him for consideration, and that opinion,
it is established, was formed upon public rumor, statements
in public journals, or common notoriety alone, such a man is
not necessarily disqualified, provided that it is made to ap-
pear to the court, upon his declaration under oath, or other-
wise, that he can and will, notwithstanding such opinion, act
impartially and fairly in deciding the question to be submitted
to him. It will be noted, therefore, that the right to unbiased
and unprejudiced jurors is still an inseparable right to the
trial by jury guaranteed by our constitution. (*Lombordi* v.
*California Street R. R.*, 124 Cal. 317, [57 Pac. 66].) It is
for the trial court in the first instance to determine, and it
must be affirmatively made to appear when a juror is shown
to have an opinion, that that opinion is founded upon public
rumor, common notoriety, or statements in the public journals,
and it must further be made to appear to the satisfaction in
the first instance of the trial court, that such opinion can and
will be absolutely laid aside by the juror, and that so laying
it aside he can and will act with strict fairness and impar-
tiality. If it is not made to appear that the juror's opinion
is based entirely upon one or all of the three sources of in-
formation above named; if it is shown that his belief has its
origin in any other source than one of the three enumerated,
he is at once as thoroughly disqualified under our code as he
would have been at common law. This proposition is here
emphasized because of its exceeding importance and conse-
quence to a defendant. Thus, in *People* v. *Miller,* 125 Cal.
44, [57 Pac. 770], a challenge was interposed upon the ground
of actual bias. The juryman stated that he had read news-
paper accounts of the killing, he had heard the matter dis-
cussed by persons, but did not know whether such persons
assumed to know the facts or not. From what he had heard
and read he had formed an opinion rather unfavorable to the
defendant,—that is, if what he had heard and read was true.
He did not know who the witnesses were. It would take a
little evidence to remove the opinion he had. The only
impression he had about the case was a sort of impressionable
opinion formed from others. If sworn as a juryman, he would
try to lay aside his opinion entirely and act solely upon the

evidence. He would regard the statements he had heard as
of little weight. He had some idea that they might be mis-
taken. He would take the instructions of the court as to the
law. This court held that the challenge for actual bias, which
was disallowed, should have been allowed, and said: ''Under
the Penal Code of this state a single exception is found to
the common-law rule, and that exception is declared in section
1076. This juror was clearly disqualified, unless he came
within the provisions of the aforesaid section. The exception
found in the law covers the single case where the opinion of
the juror is founded upon public rumor, statements in public
journals, or common notoriety, and it further appears to the
court from the declarations of the party under oath that he
could and will, notwithstanding his opinion, act impartially
and fairly upon the matters submitted to him. The court is
not allowed to hold that a juror is qualified when he is im-
pressed with an opinion as to the guilt or innocence of the
defendant, unless that opinion is based alone upon one or
more of the cases enumerated in the aforesaid section of the
code. . . . As far as this record discloses, any one of the
parties with whom the juror conversed as to the circum-
stances of the killing may have been an eye witness to the
tragedy and an important witness at the trial. The record
must show affirmatively a contrary state of facts to this, or
the exception of section 1076 to the common-law rule cannot
be invoked. There is nothing in the evidence which would
justify the conclusion that the opinion of the juror was
founded alone upon public rumors, statements in the public
journals, or common notoriety.'' So, also, in *People* v. *Wells,*
100 Cal. 227, [34 Pac. 718], this court said: ''Omitting from
the statement of the juror that these things came to him from
parties directly interested in the case, and allowing the ex-
amination to rest upon the sole fact that the juror entered
the box with an opinion as to the guilt or innocence of the
accused, that fact is of itself a disqualification even though
the juror should declare to the court under oath that, not-
withstanding his opinion, he would and could act fairly and
impartially upon the matters submitted to him. The juror
would not only be disqualified at common law, but disquali-
fied under the Penal Code, for he has not brought himself
within the provisions of section 1076; as those provisions re-

quire an affirmative showing to the court that his opinion is based upon public rumor, common notoriety, or statements in public journals. Such a showing is not made in this case."

It is thus the established law that it must be affirmatively shown that the opinion which the juror holds was based upon one or all of the matters enumerated in section 1076, or he is disqualified. Again, in *People* v. *Wiel*, 40 Cal. 268, a juryman on *voir dire* stated that he had a fixed and settled opinion regarding the guilt or innocence of the defendant. He believed what he heard and it would require evidence to remove the opinion now existing in his mind. He further stated on cross-examination that his opinion was not an unqualified one; that he could try the case and render a verdict according to the evidence, notwithstanding any opinion previously formed in regard to the case. The challenge was denied. This court said: "The ruling in disallowing the defendant's challenge to the proposed juror . . . was clearly erroneous. The statement of the juror on his examination-in-chief clearly shows that he had formed an unqualified opinion and belief as to the guilt or innocence of the defendant, notwithstanding his subsequent statement on cross-examination," and, proceeds the court: "It appears from the above recital of facts from the record that defendant was driven to a peremptory challenge to relieve himself from this, to him, obnoxious juror, and this contributed to swell the number of peremptory challenges exercised by him to the full extent allowed by law before the panel was full, and before the last man required to complete the jury was called to the box for examination as to qualifications, so that the defendant could not exercise a peremptory challenge upon this last juror, however obnoxious to him he may have been. Thus it plainly appears that the direct result of the disallowance by the court of defendant's challenge for cause was to contract the number of peremptory challenges to which he was entitled, and that such an error may have been seriously prejudicial to the defendant." In *People* v. *Suesser*, 132 Cal. 632, [64 Pac. 1095], this court said: "No more now than formerly is the defendant compelled to submit his case to a juror who has such an opinion of his guilt as will require evidence to remove, and thus unjustly add to the burden of his defense. . . . Most of the twenty peremptory challenges allowed the defendant

were exercised upon proposed jurors who stated upon *voir dire* that if sworn as jurors they would take their seats in the box with a strong opinion against the defendant which it would require evidence to remove. Some said strong evidence. Where such a state of things exists the defendant cannot have a fair and impartial trial."

These lengthy quotations have been made, not alone because they announce the well-settled law in this state, but because they are peculiarly apposite to the evidence touching the examination of jurors presented on this appeal.

The juror Seklemin testified on *voir dire* that he had read about the case and talked with people a little about it, but with no one who claimed to know anything about the facts. He had heard other people discuss it in his presence. He had formed an opinion in reference to the case, and he had that opinion at the time he was being examined, and it would take evidence to remove it. The opinion went directly to the guilt or innocence of the defendant, and if selected as a juryman it would require evidence to remove it before he could be perfectly free with reference to the trial of the case. This opinion was of such a nature that it would require less evidence, or evidence of less positive nature, to produce a conviction in his mind than it would if he had never heard of the case. This juror was challenged for cause, and upon redirect examination and recross-examination he was asked whether he could "listen to the testimony from the mouths of the witnesses here and obey the rules that you will hear the judge tell you in the end. Can you do that?" and the witness answered "I think I can, and I will; yes." Further, he testifies that he thinks he could give the defendant a fair and impartial trial. He thinks he could set aside the opinion that he has, though that opinion is one that would require evidence to remove. "It certainly would at this time, in my present frame of mind, require evidence to remove that opinion from me. I could set that opinion aside very easy, but not until I had heard some evidence on the part of the defendant. That is a positive fact. These statements that I have heard spoken by people I do not know whether they are true or false. I never heard them denied. Have no reason now to think they were untrue, and I would continue with that idea in view until the defendant placed some evi-

dence before me to the contrary." Again interrogated by the district attorney as to whether he could not and would not set aside this opinion and obey the instructions of the judge, he answers, "I think I can; yes." To the next appeal of the district attorney, "Won't you do that if the judge tells you that it is the law?" he answers, "I think I can set aside my present opinion. I will obey the instructions of the court, but I have a certain opinion. I think I can set that opinion aside." The final question is then asked: "Your conscientious opinion now is that you can and will do it, is that right?"

"A. Yes."

The court then interrogates the juror:

"Q. And you can do that and will do it?

"A. I think I can and I will.

"Q. You say you think you can. Do you know that you can?

"A. I know that I can."

The challenge was denied.

E. R. Winters testified that he discussed the case with his neighbors and read it in the papers. The people with whom he talked made statements in a general way about the case. They were people in whom he had confidence and had no reason to disbelieve them, and accepted their statements as true. From these statements, and from what he had heard and read generally, he had formed an opinion touching the guilt or innocence of the defendant, and he had that opinion still. "It is a fixed and settled opinion, at least to the extent that it would require some evidence to remove it. If selected as a juryman I would possibly require the prosecution to convince me beyond a reasonable doubt of the guilt of the defendant. In my present state of mind it would not require as much evidence to convince me of the guilt of this defendant in this case as it would where I had never heard anything about the facts and circumstances. It might require more evidence on the part of the defense to prove the young man innocent than it would in a case I had never heard anything about. Feeling as I do, and taking everything into consideration, what I have heard and read, and the opinion I have, I do not see why I could not fairly and impartially try the case at this time. From these things I have formed an opinion in a certain way, and that opinion would require evidence to

remove it. The mere direction or request on my part on my mind to lay aside that opinion would not be sufficient. I certainly would have to have evidence to lay aside that opinion that I now have.'' Further, he testifies that the opinion is formed solely upon statements in the newspapers and public rumors. It is not an unqualified opinion. That he is in a state of mind which would not prevent him from acting with entire impartiality. The challenge for cause interposed by the defense being denied by the prosecution, the juror further testifies, ''By an unqualified opinion, I mean that I have not such an opinion, if there was sufficient evidence, that it could not be changed. I could change that opinion if there was evidence, but it would require, in my present frame of mind, evidence to change that opinion.''

''Q. You read of the fact that the defendant had been accused of several different murders?

''A. Yes, sir. I don't know as that would tend to prejudice me against the defendant. It would take evidence to remove my opinion now. The opinion is based upon whether or not those things that I heard and read are true or not.''

Upon this juror the defendant was required to exercise a peremptory challenge.

E. Neeley testified that he had read some of the accounts of the preliminary examination of the defendant, and never discussed the case, only just passing remarks with his neighbors. He had formed an opinion. ''The opinion is one that, until evidence is introduced to remove it I will take with me into the jury box. I would have to have evidence on the part of the defense to change my mind. If the evidence brought out here in this case is different from what I have read that came out at the preliminary examination, then I have no opinion. I don't believe I could act just as fairly and impartially in this case if selected as a juryman as I could in a case that I have never heard anything about. The little impression that I have would bob up until all the evidence was in. I think that opinion or impression that I have would crop up in my consideration of the case. I don't know that I could handle this case as a juryman with the same degree of fairness and impartiality that I could in a case that I knew nothing about. I think that is the way I feel.'' This juror was challenged, and upon examination by the district attorney he

testified that his impression would go into the jury box with him; that he did not think it would prevent him from obeying the instructions of the court, and he did not think it would prevent him from acting with entire impartiality. If taken as a juror he would give his verdict according to the evidence and the instructions of the court. He would have to do it. He would do it to the best of his ability. Defendant's challenge for cause was disallowed.

George Wells read of the case in the newspapers and talked it over with people. He did not know whether the people he talked with knew the facts or not. The people with whom he talked were people in whom he had confidence. He never heard any statements to the contrary from what he heard from them. He did not know whether they were witnesses in the case or not. From what he had heard, he had formed an opinion with reference to the guilt or innocence of the defendant. The opinion was based on what he heard and read. "Do not know whether or not the things I have heard were from people who were witnesses or not. It would require evidence upon the part of the defendant to change my opinion. I could disregard the opinion if I heard different evidence. It is not such an opinion that it would influence me in the rendition of my verdict." He thinks that he feels that he could meet the qualifications of a juror. If he heard the same evidence he would have the same opinion. It is an opinion such that it would require less evidence to convict the defendant than if he never heard of the case. To that extent it would influence his mind as to the rendition of a verdict until the opinion was changed. The opinion is adverse to the defendant, and based not only upon what he had read, but upon the statements of people with whom he talked. The people were not witnesses that he knew of. He does not know whether they are or not. He could absolutely discard from his mind any opinion and listen to the evidence, and nothing else, and upon that alone, under the instructions of the court, render his verdict, and would not be influenced by the opinion that he then had; but still that opinion is so strong that it would require evidence to remove it from his mind. It is a fixed and settled opinion until it is changed. It is not absolutely changeless. Upon examination by the district attorney, in answer to the question: "Well, now, this is based upon

newspaper reports and public rumor, is it not?" he said, "Yes."

"Q. Solely based on that?

"A. Yes."

The challenge was denied and the juror peremptorily excused by the defense.

N. N. Norton, upon *voir dire*, testified that he had read pretty much all about the case, and conversed in regard to it with his neighbors. He did not know whether the people he talked with knew anything about the facts in the case or not. "I do not think they knew any more than I read in the papers, but I don't know." He had an opinion in reference to the guilt or innocence of the defendant. He thought that opinion would go with him into the jury box. It was unfavorable to the defendant, and it would take evidence on the part of the defendant to remove it. Was pretty sure that unless some affirmative evidence was introduced to change his mind with reference to the matter, the opinion would influence him in the rendition of the verdict. On cross-examination he testifies that the opinion formed in his mind is from newspaper reports alone. Asked if he would obey the instructions of the court and regard only the evidence introduced, he answers that he would try to do that. Asked whether he would find anybody guilty of a crime on newspaper report, he says he does not think he would. He does not think he would allow an unsworn newspaper report to influence his mind against testimony sworn to in court. Finally, asked by the court if he could fairly and impartially try the case and make up his verdict solely from the evidence and from the instructions, he answers, "I think so." The challenge to this juror was disallowed, and the defendant exercised a peremptory challenge upon him.

John Cobbey had read and heard of the crime with which the defendant was charged, and attended the preliminary examination of this defendant charged with the murder of Mr. Jackson. He had discussed the case and heard it discussed. He did not know whether the people with whom he talked were witnesses in this case or not. He does not think he talked with any one who was a witness; he does not know that they were. "Do not think I have talked with any of the officers in the case." He had formed an opinion as to

the guilt of the defendant. He recalled portions of what he heard and statements made in reference to the case. He heard people make statements in reference to this defendant being seen on the White's Bridge road on the afternoon the crime was committed. (Witnesses in the case did testify to seeing the defendant on the White's Bridge road on the afternoon of the day when the crime was committed.) Further, he testifies that the opinion could be removed by the same kind of evidence that it was formed with; that it was from public rumors. He rather thought he could try the case fairly and impartially; rather thought he could act with the same degree of fairness, if selected as a juror, as he could in a case where he had never read or heard anything about it. He would require just as much evidence on the part of the prosecution in this case as if he had never formed an opinion or impression. Further, he testifies that, feeling as he does now, it would require evidence of some kind or character to remove from his mind the opinion that he has touching the guilt of the defendant. Challenged, he testified that the opinion is made up of public opinion and newspaper reports. He thinks he could give the defendant the presumption of innocence. He thinks he could wholly discard the impression which he has, not act upon it, and not take it into consideration; but until he does receive some evidence—something of some kind—he would have this opinion, and it would require evidence—sworn or unsworn evidence—something, to remove it from his mind. The challenge for cause to this juror was disallowed and a peremptory challenge exercised upon him.

J. J. Wash, examined after the defendant had exercised all of his peremptory challenges, had read of the case, heard it discussed, and discussed it with others. He had an opinion, and believed that it would require evidence on the part of the defense to remove the opinion. It was adverse to the defendant. If the evidence was strong enough he could lay aside the opinion. The opinion was created from rumors and newspaper reports. "I could lay aside the opinion provided there was sufficient evidence produced to convince me that it was a mistake I am laboring under. Until that evidence was introduced I would have the opinion, but not necessarily a fixed or settled opinion. It would require evidence on the part of the defendant to remove the opinion, but until it was removed

by evidence it would influence me to the extent of requiring evidence to remove it.'' Challenge for cause interposed by the defense being denied, the juror further testified that if sworn as a juror he could and would depend upon the testimony as he heard it from the lips of the witnesses and the instructions of the court.

With these extracts from the examination of the jurors before us, we think little need of comment is required. The jurors were doubtless conscientious in their answers, but as to some it certainly cannot be said that they gave evidence of the impartiality of mind which alone would qualify them. In other instances, while in answer to leading questions from the district attorney they stated that their opinions were founded upon common notoriety or the public journals, it is made equally apparent that their opinions were not so founded. One had attended the preliminary examination of the defendant, which preliminary examination he thinks was for the murder of Jackson. He talked with a man who saw the defendant at White's Bridge on the afternoon of the homicide. Witness did testify to seeing this defendant at White's Bridge at that time. Other jurors testified that they did not know whether or not the persons with whom they talked were witnesses, or purported to know the facts. In each and all of these cases there is a failure to establish affirmatively that the opinion of the juror was based wholly upon public rumor or statements in the public journals or common notoriety. It is not sufficient to qualify a juror that he should be led to say that his opinion is based upon common rumor, when from his own lips the evidence discloses that it is not so founded. As to some of the jurors, it is apparent that they were biased, within the meaning of the code. As to others, it is not made apparent that their opinions were founded exclusively upon matters enumerated in section 1076 of the Penal Code. ''In criminal cases,'' says Judge Cooley (*People* v. *Holt*, 13 Mich. 224), ''wherein, after full examination, the testimony given upon the challenge leaves a reasonable doubt of the impartiality of the jury the defendant should be given the benefit of that doubt.''

In contemplation of the new trial which must necessarily result from the foregoing views, certain questions, which must arise upon such new trial, demand consideration. A juror

CLII Cal.—35

upon *voir dire* had stated that he held an opinion touching the guilt or innocence of the defendant in reference to the Jackson murder case. He was then asked if, believing the defendant guilty in the Jackson case, he had not formed an adverse opinion toward the defendant in the case at bar. The prosecution objected to this question and was sustained. The defense then propounded the following question: "Now, Mr. Colburn, you believe the defendant in this case is guilty in the Jackson matter?" To this, likewise, the prosecution's objection was sustained. These questions should have been allowed,—not only as tending to throw light upon the juror's condition of mind as to the matter under investigation, but also as legitimate inquiry for the purpose of determining whether a peremptory challenge should be interposed to him. In the very nature of the workings of the human mind, if the juror did believe the defendant to have been guilty of the Jackson murder, he was more likely to have believed him guilty of the murder here charged, and if, in fact, the juror did believe the defendant guilty of the Jackson murder, the defendant was clearly entitled to know this, to the end that he might peremptorily excuse him from sitting upon the jury.

A witness testified that on the day of the murder he met Mr. Hayes (the murdered man) and his wife, at White's Bridge. They were going West. He was asked if he had had any conversation with Mr. Hayes, and, answering "Yes," was told to give the conversation. The defense objected. The witness answered: "He said he was going to Fresno. He said he was unwell and was going to Fresno to see a doctor." It cannot be perceived how this evidence, even if in strictness inadmissible, could have been in the slightest degree injurious to the defendant, while elsewhere in defendant's brief it is contended that this very evidence is of importance and value to defendant, as showing that he could not have had any knowledge of the Hayes's plans, and thus could not have prearranged any plot for the murder.

The witness, McSwain, had taken measurements of the size of certain tracks made by bicycle wheels, it being contended by the prosecution that the defendant and his brother rode bicycles to the scene of the murder. The witness had lost the memorandum of the measurements, and was permitted, over objection, to testify that one of the tracks was about an

inch wide, and that the other was somewhat smaller. The
rulings of the court were proper. In the absence of the
memorandum the testimony was the best which could be af-
forded, and the evidence was admissible under the well-settled
rule that a person may give his opinion on the question of
identity, or his judgment of size, weight, color, quantity, dis-
tance, and time,—matters of opinion open to all men of ordi-
nary information. (*Raymond* v. *Glover,* 122 Cal. 475, [55
Pac. 398]; *Commonwealth* v. *O'Brien,* 134 Mass. 198; 1 Wig-
more on Evidence, secs. 413, 559, 1977; 5 Encyclopædia of
Evidence, pp. 476 et seq.)

Repeatedly, in the argument before the jury, the district
attorney referred to the murder of Jackson, and of this de-
fendant and his brother's connection with it: "Then all at
once they were arrested and both in jail—two charges—
Jackson killed, lonely old man out here—unoffending woman
and man murdered. . . ." He could not have sworn to it if
he had not been charged with the Jackson murder. ". . . We
sought to prove that he had recognized him (defendant) be-
fore he was arrested and before the Jackson murder." It is
sought to justify these remarks of the district attorney upon
the ground that many of the jurors upon *voir dire* were in-
terrogated as to their knowledge of the Jackson murder, and
of defendant's connection with it, as to whether or not the
fact that the defendant was charged with this murder tended
to influence the jurors' opinions in the case at bar, and other
like questions. But, while it is apparent that the Jackson
murder was a matter of common knowledge and notoriety in
the community, and was doubtless in a general way known
to every man upon the jury, yet, so far as this record dis-
closes, there was no evidence upon the trial touching the mur-
der, and the references of the district attorney to it, and to
defendant's connection with it, were therefore improper.

The information in this case was filed upon the twenty-sixth
day of May, 1906. This date was one of the holidays declared
by the chief executive, following the earthquake and fire in
the city and county of San Francisco. It is contended by de-
fendant that the information was illegally filed and is there-
fore void. Section 73 of the Code of Civil Procedure declares
that the superior court shall be always open, legal holidays and
non-judicial days excepted. Section 134 of the same code

declares that no court shall be open nor shall any judicial business be transacted on a holiday, saving for the purposes enumerated. The presentation of an information by the district attorney for filing, and the reception of this information and the placing of its file-mark thereon by the clerk of the court, are all purely ministerial acts. (*Ex parte Sterns,* 82 Cal. 245, [23 Pac. 38]; *People* v. *Nogiri,* 142 Cal. 596, [76 Pac. 490].) The only provision of the law other than those cited, bearing upon this question, is that contained in section 13 of the Code of Civil Procedure, which declares that whenever an act of a secular nature is appointed by law or contract to be performed upon a particular day, which day falls upon a holiday, such act may be performed upon the next business day. But this amounts to no more than a legal permission for the postponement of the act, and in no sense prohibits the doing of the act upon the designated day. It follows that it was not error, therefore, to file the information upon a legal holiday.

Coming, finally, to the instructions: As to the one to the effect that there need be no appreciable space of time between the formation of the intent to kill and the act of killing, it is perhaps not necessary to suggest that such instruction should be given in the language indicated by *People* v. *Maughs,* 149 Cal. 253, [86 Pac. 187].

As has been said, throughout the case of the prosecution it was indicated and argued that larceny was the motive for these murders. The court instructed the jury as follows: "In this case it is not claimed by the prosecution that the homicide charged was committed in the perpetration or attempt to perpetrate another felony." It is manifest that the contention of the prosecution was at variance with this instruction, and while it may not be perceived that the giving of it was injurious to the defendant, yet certainly under the evidence it had no proper place in the case.

The evidence, while circumstantial, was sufficient to sustain the verdict.

We perceive no other matters calling for consideration, but for the reasons given the judgment and order are reversed and the cause remanded.

McFarland, J., Lorigan, J., and Beatty, C. J., concurred.