[Civ. No. 16468.   First Dist., Div. One.   Nov. 28, 1956.]

JOSEPH G. WILLIAMS, Respondent, v. STAUFFER CHEMICAL COMPANY (a Corporation) et al., Defendants; LOUIS A. JOAQUIN et al., Appellants.

Theodore Tamba and F. A. Plank for Appellants.

Hoberg & Finger and Joseph M. Paper for Respondent.

WOOD (Fred B.), J.—Plaintiff (an employee of Britz Chemical Company, a dealer in commercial fertilizers) was injured by sulphuric acid when sprayed from a hose that slipped out of place during delivery from a tank-trailer to a stationary tank on the ranch of one of Britz' customers.

Britz ordered the acid from defendant Stauffer Chemical Company and Stauffer called on defendant Lou-Jak Trucking Service (the name under which defendants Louis Joaquin and Jack Rexelle, partners, did business) to pick up a loaded tank-trailer and deliver it at the Britz plant. Defendant Kaeten, with his own truck, did the hauling. After he had

filled a certain tank at the Britz plant, he was instructed to deliver the remainder at four smaller tanks at the ranch of one of Britz' customers. During delivery at the fourth of these tanks the accident occurred.

After suit filed, plaintiff gave Stauffer a covenant not to sue and dismissed without prejudice as to Stauffer. He recovered against Joaquin and Rexelle (Lou-Jak) and Kaeten a judgment for $125,000, which by stipulation was reduced to $110,000. Joaquin and Rexelle have appealed.

(1) *Appellants claim the trial court should have instructed the jury that Kaeten was an independent contractor instead of giving them the question whether he was an independent contractor or an employee of Lou-Jak.*

To establish this claim appellants must be able to show that it appears from the evidence as a matter of law that Kaeten was an independent contractor. This can not be done. There is a conflict in the evidence. There is substantial evidence which, with inferences that reasonably may be drawn therefrom, supports the jury's implied finding that Kaeten was an employee, not an independent contractor. The following is a summary of the significant features of that evidence.

Lou-Jak made use of the services of 9 or 10 persons, including truck drivers, whom they admitted were employees and a considerable number, including Kaeten, whom they called "subhaulers." Although Kaeten owned and operated his own truck (power unit) it was painted and decorated the same as those owned by Lou-Jak, bore a sign reading "Lou-Jak Trucking Service" and was assigned a Lou-Jak number. ▮▮ Kaeten had no contract, written or oral, with Lou-Jak, who could terminate his services at any time. This gave Lou-Jak the right to direct and control Kaeten in the performance of the delivery services he rendered. These and other significant factors* furnished ample support for the

---

*The orders for deliveries were received at the Lou-Jak office usually by phone and all charges to be made for a haul were determined by Lou-Jak, Kaeten receiving 90 per cent of the charge, Lou-Jak 10 per cent. Kaeten never billed any shipper for any of the hauling he did, all bills being sent out on Lou-Jak stationery. Kaeten was always paid by Lou-Jak at the end of the month regardless of whether or not the shipper had paid Lou-Jak. Often Lou-Jak arranged to give the shippers credit but Kaeten had no part in these transactions. Each month Lou-Jak rendered a statement to Kaeten, deducting charges for P.U.C. and B.E. Although Kaeten was not certain what "B.E." meant; he accepted Lou-Jak's statement as proper.

For a two-year period immediately prior to the accident, Kaeten had not done any hauling for anyone except Lou-Jak. During the year prior

implied finding that Kaeten was an employee, not an independent contractor.

That such evidence and the inferences that reasonably may be drawn therefrom support the jury's implied finding of an employer-employee relationship, clearly appears by use of the rules for determining the existence of such a relationship which were enunciated and expounded by our Supreme Court in *Riskin* v. *Industrial Acc. Com.*, 23 Cal.2d 248 at 253-255 [144 P.2d 16]. (See also *Malloy* v. *Fong*, 37 Cal.2d 356, 370 [232 P.2d 241]; *Isenberg* v. *California Emp. Stab. Com.*, 30 Cal.2d 34, 37-40 [180 P.2d 11]; *Empire Star Mines Co.* v. *California Emp. Com.*, 28 Cal.2d 33, 43-44 [168 P.2d 686]; *Industrial Indem. Exch.* v. *Industrial Acc. Com.*, 26 Cal.2d 130, 134-136 [156 P.2d 926]; *Sudduth* v. *California Emp. Stab. Com.*, 130 Cal.App.2d 304, 311-312 [278 P.2d 946]; *Phillips* v. *Larrabee*, 32 Cal.App.2d 720, 724-728 [90 P.2d 820].)

▮ Appellants emphasize the fact that Kaeten is a duly licensed radial highway carrier, contending that appellants could not be liable for the negligence of a person operating under a separate and independent license of his own. That is a *non sequitur*. Kaeten's possession of the license authorizes

---

to the accident, Kaeten had hauled only Stauffer products and only for Lou-Jak.

The evidence showed that Kaeten reported daily to Lou-Jak yards; defendant Joaquin answered affirmatively to the question whether he was ''supposed'' to do this.

Lou-Jak maintained a bulletin board upon which all safety instructions sent out by their insurer would be posted. When safety bulletins on the hauling of acids were received from the insurer, Lou-Jak would post them and the drivers were instructed to come and look to find out what they should do in regard to taking safety precautions. If bulletin board instructions pertained to Kaeten, he would accept them.

Lou-Jak desired to deal directly with its customers and if a customer had a complaint against a driver or about the load, or a driver had a complaint, about anything other than the tank-trailer, i.e., routes or other conditions, Lou-Jak handled them. Joaquin admitted that Lou-Jak did not want the drivers to take their complaints to the shippers.

Kaeten was instructed how to execute a receipt for consigned goods and concerning the procuring of the consignee's signature. The receipts used were supplied to all drivers by Lou-Jak and bore a letterhead imprinted ''Lou-Jak Trucking Service.''

Frequently one of the Lou-Jak partners would inspect the trucks in Lou-Jak's yards for safety features and if Kaeten had his truck in the yard at the time, it would be inspected along with any other piece of equipment.

Lou-Jak had a group hospitalization plan which covered those who worked for it. Kaeten was included under this plan along with those drivers who admittedly were employees.

326

but does not require him to contract independently. We find nothing to the contrary in *Gaskill* v. *Calaveras Cement Co.,* 102 Cal.App.2d 120 [226 P.2d 633], *Gilbert* v. *Rogers,* 117 Cal.App.2d 712 [256 P.2d 574], or *Eli* v. *Murphy,* 39 Cal.2d 598 [248 P.2d 756].

(2) *Did the court properly instruct the jury on the question of employee or independent contractor relationship?*

█ (a) *In these instructions the court used the word "agent" several times interchangeably with the word "employee."* Appellants contend this was misleading and confusing. We do not think so.

These two words were used by the court as if synonymous, and proper tests for determining the employee relationship were given.

Under these circumstances we do not believe it reasonable to assume that the jury knew the difference between the legal concepts "agent" and "employee" and upon the basis of that assumption to infer that the jury was confused by the use of these two terms.

█ (b) *When listing the various factors to consider in determining whether Kaeten was an employee or an independent contractor, the court did not in each instance expressly inform the jury what use to make of that particular factor.*

Appellants claim that this must have confused the jury. We do not so view it.

The jury was explicitly informed that "the most important factor is the right to control the manner and means of accomplishing the result desired. If the employer has the authority to exercise complete control, whether or not that control is exercised with respect to all details, an employer-employee relationship exists. But if the employer does not have such authority, the relationship is one of employer-independent contractor," and that "another important factor to be considered is the right of the employer to discharge the person working for him at will, without cause. If such right exists, it points toward an employment relationship. If it does not, its absence points towards an employer-independent contractor relationship."

Having described these two "important" factors, the court took up "other" factors, saying: "Other factors to be taken into consideration by you are whether or not the one performing services is engaged in a distinct occupation or business; the kind of occupation, with reference to whether in the locality the work is usually done under the direction of the

principal or by specialists without supervision; the skill required in the particular occupation; whether the principal or the workman supplies the instrumentalities, tools, and the place of work, or the person doing the work; the length of time for which services are to be performed; the method of payment, whether by the time or by the job; whether or not the work is part of the regular business of the principal; and whether or not the parties believe they are creating the relationship of employer-employee, or of employer and independent contractor.''

While in this portion of such an instruction it might be well to tell the jury explicitly which way each factor points, we think the bearing and significance of each is reasonably clear from the context in which mentioned and from the nature of the subject dealt with, especially in the light of definitions of the two relationships (employee and independent contractor) given in another instruction. We do not think the jury could have been misled.

(3) *It was not prejudicial error for the court, when giving appellants' instructions on assumption of risk, to delete therefrom instructions on contributory negligence.*

The latter subject was well covered by separate general instructions and an instruction which pointed out the distinctions between assumption of risk and contributory negligence.

Appellants make the claim that the deleted instruction* was peculiarly applicable to the facts of this case; hence, the general instructions did not pointedly cover this particular feature. We do not think appellants are entitled to complain. They presented this particular instruction as an integral part of an instruction on assumption of risk. In that form it could have been confusing to the jury. It was not incumbent upon the court, when striking it from the assumption of risk instruction, to set it up as a separate instruction; especially as no claim is made that appellants brought to the attention of the trial court the asserted specific and peculiar character of the deleted portion.

(4) *Appellants take exception to two instructions concerning the duty of defendant Kaeten to exercise ordinary care*

---

*The gist of it was that if in the exercise of ordinary care one should or would have known of the existence of the danger, he would be guilty of contributory negligence if he placed himself in a position which renders him subject to the danger.

(a) in operating the hose and its equipment and (b) in furnishing or supplying the truck and trailer with proper equipment adequate to render the unloading of sulphuric acid reasonably safe. We find no error in either instruction, and appellants cite no authorities. Appellants say that this was Stauffer's tank-trailer; hence, Kaeten had no duty to equip it. That is beside the point. He had the job of delivering the acid and of doing it safely. That, in the instant case, involved the use of a suitably stout hose. No hose was furnished with the tank-trailer. Kaeten joined and used two lengths of hose which he found at Britz' plant. There was evidence that tended to prove that he knew one of these pieces was of poor quality.

██ (5) *Was prejudicial error committed when the court rejected appellants' instruction concerning plaintiff's covenant not to sue Stauffer Chemical and gave a different one instead?*

A few days before the trial plaintiff filed a document dismissing the action, without prejudice, as to defendant Stauffer Chemical Co.; also, written agreements were executed with Stauffer whereby plaintiff and his employer's workmen's compensation insurance carrier, respectively, agreed not to sue Stauffer. Williams was paid $15,000 by Stauffer's insurance carrier. There was a special interrogatory concerning the "transaction between Plaintiff . . . and Stauffer Company (and its carrier Hartford Accident & Indemnity Company)" the question being whether this transaction was "a covenant not to sue" or "a release and satisfaction." The jury found it was a covenant not to sue.

In respect to this issue, the court instructed as follows: "Now, one who has a claim against two or more persons may, if he so desires, do one of two things, and if the parties agree. He may enter a settlement of his cause and of his claim— of his entire claim against the other. If he does that one against one joint tort feasor, or alleged joint tort feasor, he releases all; but if he does not do that, but enters into an agreement that he will not sue, or will not further pursue a suit, and gives an indemnity of such alleged joint tort feasor against any further action on his part or on his behalf, then he does not release the other alleged joint feasors. In this case there was entered into between the Stauffer Chemical Company and its insurance carrier on the one hand, and the plaintiff, a certain document which is entitled 'a covenant not to sue,' and which according to its terms is a covenant not to sue.

"As between those two parties, the plaintiff and Stauffer Chemical Company or its carrier, neither one can later be ever made to say that it was anything but a covenant not to sue. However, as to third parties, they are not bound by the terms of the written instrument, necessarily; but may show that it was something other than what it says it was, and other than its terms show it to be.

"The burden of proof, then, is upon them to show, if they can, by evidence in the case that what was intended by the parties to the transaction was a release, a settlement between them, and if that is done it releases all; but if there is nothing outside the agreement to show that it was other than what its terms show it to be, then I instruct you that it is a covenant not to sue and not a release. That is, the Court has the determination of the legal effect of that document in itself as it stands, and I instruct you that it is by its terms a covenant not to sue, and not a release; and it is only if the defendants show by a preponderance of evidence that it is, or that despite its legal terms it was intended as a release, that the other defendants are released."

This impresses us as a correct instruction. It tells the jury the contrasting legal consequences of the covenant not to sue and the settlement of a claim; that the agreement here involved is a covenant not to sue but that third parties may show by evidence outside the agreement that the parties to the agreement intended a release, a settlement; and that the defendants have the burden of proving that the parties intended a release and not a covenant not to sue.

Appellants contend the pivotal issue was whether the $15,000 was paid plaintiff as "compensation for the injuries and damages" he had sustained, not by way of "settlement of his cause and of his claim." There is not much difference between these two expressions but the latter seems the broader, the more appropriate of the two. It is the type of expression used in *Pellett* v. *Sonotone Corp.*, 26 Cal.2d 705, 712 [160 P.2d 783, 160 A.L.R. 863], acceptance of payment "in satisfaction or in compromise of his right of action." In *Dougherty* v. *California Kettleman Oil Royalties, Inc.*, 13 Cal.2d 174 [88 P.2d 690], both expressions were used but with emphasis upon satisfaction of the claim, of the cause of action: ". . . the theory behind the rule is that there can be but one compensation for the joint wrong; that each joint tort feasor is responsible for the whole damage, and that once the injured

party is paid for the injury he has suffered by any one of the wrongdoers, his cause of action is satisfied and his right to proceed against the others is at an end; or, stated in another way, if the payment is, in law, a satisfaction of the claim against one, it is a satisfaction of the entire claim and necessarily releases all." (Pp. 180-181.) Four of the five instructions on this subject requested by appellants and rejected by the court used the expression "compensation for injuries and damages," or a variant thereof. Their remaining instruction spoke in terms of "discharge" of "any further or future liability or responsibility."

Appellants complain of that portion of the court's instruction in which the court interpreted the agreement; told the jury that the burden was upon appellants to show "if they can" by evidence in the case that the transaction was intended to be a release and settlement; and that "if there is nothing outside the agreement to show other than what its terms show it to be" it was a covenant and not a release. Appellants say "the implication is that the evidence presented was 'nothing outside the agreement' to show the intention of the parties." We derive no such inference. It was the function of the court to interpret the agreement, inform the jury thereon, and advise the jury of its function, which this instruction clearly did.

Appellants' instructions went into some detail in mentioning evidence they thought material to the issue. We do not think that was necessary. The court defined and explained the issue. When it told the jury they should look to "evidence in the case" outside the agreement itself for an intent, if any, to settle the cause or claim, and that it would take a "preponderance of evidence" to establish such an intent, we are convinced the jury understood, particularly in view of some of the general instructions given, that they were to consider all of the evidence in the case (outside of the agreement) and inferences that might be reasonably drawn therefrom. Moreover, we find that the court's instruction was more clearly expressed than those offered by the appellants, and easier for the jury to follow and comprehend.

Finally, appellants did not in their opening brief cite any substantial evidence showing an intent different from that expressed in the agreement. Respondent in his reply brief said there is none, and appellants have filed no closing brief.

We conclude there was no error, certainly no prejudicial

error, in the giving and refusing of instructions on this subject.

The judgment is affirmed.

Peters, P. J., and Bray, J., concurred.

A petition for a rehearing was denied December 28, 1956, and appellants' petition for a hearing by the Supreme Court was denied January 23, 1957.