[Civ. No. 26010. First Dist., Div. Four. Mar. 31, 1970.]

JOSEPH WILLIAM ALBRECHT, a Minor, etc.,
Plaintiff and Appellant, v.
GILBERT STUART BROUGHTON et al., Defendants and Respondents.

## COUNSEL

Caputo, Liccardo & Burriesci and Salvador A. Liccardo for Plaintiff and Appellant.

Campbell, Custer, Warburton & Britton and Alfred B. Britton, Jr., for Defendants and Respondents.

## OPINION

**CHRISTIAN, J.**—Plaintiff Joseph William Albrecht appeals from a judgment entered upon a defense verdict returned by the jury in this action for personal injuries.

During the early morning of March 14, 1966, a pickup truck driven by respondent Gilbert Stuart Broughton collided with appellant, a boy then aged 14, who was riding a bicycle. Respondent was driving to work when the collision occurred, at a time which witnesses put at between 5:50 and shortly after 6 a.m. Just prior to the collision respondent was travelling between 25 and 35 miles per hour. Respondent had been driving east along Terrace Drive in Cupertino, when appellant, delivering newspapers on his bicycle, entered the "T" intersection formed where Terra Bella runs into Terrace Drive. Appellant attempted to cross the intersection to the northeast. Respondent first saw appellant just before entering the intersection; he immediately applied his brakes. Respondent knew that appellant usually delivered papers in the area of the collision at about 5:30. Respondent's own newspaper had not been delivered, but delivery had been stopped during respondent's vacation; he testified that he therefore assumed that appellant had already completed his paper route and had skipped respondent's house. But there was evidence that it was not unusual for the boy not to have completed his route by that time.

Appellant is permanently and totally disabled by injuries he suffered in the collision. The jury returned a general verdict for the defense.

Before the trial began, counsel for appellant moved for an order prohib-

iting the defense from presenting evidence that appellant had already received $75,000 under a settlement with respondent's employer, Dickman Construction Company. In support of the motion counsel declared that the court might, "as a matter of law, . . . deduct the amount recovered by way of settlement from [any] verdict, . . . ." The court refused to adopt the procedure suggested by appellant and instead decided to receive evidence of the settlement, supposedly to prevent excessive recovery by appellant and to prevent the possibility of double payment by respondent, should Dickman Construction Company seek indemnity against him for the amount it paid in settlement. Appellant pointed out that news of the settlement might be harmful to his case in that the jury might consider it unfair for appellant to release a corporate defendant for $75,000 and then press a further claim for over a million dollars against an individual. Two other aspects of possible prejudice are that the compromise might reflect upon appellant's opinion of the strength of his case and upon the seriousness of appellant's injuries. Apparently in order to mitigate the effect of these factors, the court permitted appellant to bring in evidence, and argue that evidence before the jury, to explain why so comparatively small a settlement was accepted in compensation for appellant's catastrophic injuries.

The amount of damages to be awarded upon a finding of liability is, in the first instance, an issue of fact framed by the pleadings. Where one codefendant has been released upon payment of an amount in settlement of the claim against him, the remaining codefendant may be entitled to a reduction of the claim against him. (Code Civ. Proc., § 877, subd. (a).) For the purpose of determining whether such entitlement exists, subsidiary issues of fact may be presented. Therefore, "evidence of such payments is admissible for the purpose of reducing *pro tanto* the amount of damages [a plaintiff] may be entitled to recover." (*Laurenzi* v. *Vranizan* (1945) 25 Cal.2d 806, 813 [155 P.2d 633]; see also *Steele* v. *Hash* (1963) 212 Cal.App.2d 1, 3-4 [27 Cal.Rptr. 853].) But where there is an admission "that a settlement has been made with one or more joint tortfeasors in a certain amount there is no factual question to be resolved by the jury respecting the settlement." (*Cseri* v. *D'Amore* (1965) 232 Cal.App.2d 622, 625 [43 Cal.Rptr. 36]; compare procedure followed in *Williams* v. *Stauffer Chemical Co.* (1956) 146 Cal.App.2d 322, 324 [304 P.2d 141].) (3a) Here, appellant explicitly admitted the existence and amount of the settlement which had been made with Dickman Construction Company. The court could easily give effect to the admission either by requiring a clear stipulation as to procedure or by accepting the admission and later directing an appropriate reduction before entering judgment on the verdict.

By doing so, the court could both have reduced trial time by eliminating irrelevancies and have prevented unnecessary prejudice to appellant's case.

■ Respondent seems to claim a vested interest in having the jury made aware of the fact of a settlement and of its amount. No doubt respondent's counsel was correct in believing that it was tactically advantageous for him to be able to bring this information to the jury in a case where the evidence on liability was in sharp conflict and the damages were so severe. There can be no question that it was a great advantage to the defense to be able to let the jury know that appellant's injuries were not wholly uncompensated. But that advantage is not one which a party is *entitled* to enjoy in the absence of any issue in the determination of which the evidence will be relevant and proper for the jury to hear. The situation is closely analogous to an admission of liability by a defendant. Such an admission precludes the introduction of evidence of liability unless it is relevant to some distinct issue remaining in the case. (*Fuentes* v. *Tucker* (1947) 31 Cal.2d 1 [187 P.2d 752]; 2 Witkin, Cal. Evidence (2d ed. 1966) § 305, p. 268.) That is so even though, as in *Fuentes, supra,* the party offering the evidence is deprived of an important tactical advantage. Indeed, where the evidence is not relevant to any real issue, the advantage sought to be gained by its presentation must be recognized as unfair. Each side takes the risk that the "picture" of the case seen by the jury may be an unfavorable decisional context. But neither side is entitled to litigate a nonexistent issue for no purpose other than to alter the decisional context in his favor. ■ It was error to refuse to accept appellant's admission and to receive evidence of the settlement.

The evidence bearing on the issues determining liability was sharply conflicting. Experience in the trial of cases suggests that jury psychology in the determination of liability is inevitably affected by the particular and perhaps limited view which the jurors have been given, of the consequences of the decision they are to make. ■ Our examination " 'of the entire cause, including the evidence,' " (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243], cert. den. 355 U.S. 846 [2 L.Ed.2d 55, 78 S.Ct. 70]) leads us to believe that it is reasonably probable that but for the jury's knowledge that a substantial settlement had already been received they would have returned a verdict in some amount in favor of appellant. Therefore the judgment is not saved by article VI, section 13, of the California Constitution.

Because a new trial will be necessary, we shall deal briefly with appellant's principal contentions concerning the instructions.

The court refused an instruction requested by appellant to the effect

that an adult is required to exercise special care when dealing with a "youth of adolescent years."[1]

It might appear that the requested instruction is no more than an amplification of a general instruction which covers the subject. ■ Where a defendant fails to exercise that care which would have been exercised by a man of ordinary prudence in the same situation and possessing the same knowledge, he is chargeable with negligence. (*Kopfinger* v. *Grand Central Public Market* (1964) 60 Cal.2d 852 [37 Cal.Rptr. 65, 389 P.2d 529].) Here the fact that respondent may have known that a paperboy might be in the vicinity would be one of the factors considered by the trier of fact in determining what a reasonable man would have done in the situation. But it has been held that failure to give such an instruction if applicable is error. (*Calandri* v. *Ione Unified School District, supra,* 219 Cal.App.2d 542; *Morningred* v. *Golden State Co.* (1961) 196 Cal.App.2d 130 [16 Cal.Rptr. 219]; *Guyton* v. *City of Los Angeles, supra,* 174 Cal.App.2d 354.) Therefore it would be better to give the instruction on retrial.

■ Appellant claims error in the giving of a standard instruction on imminent peril. The contention is that the instruction was inapplicable because as a matter of law respondent was guilty of negligence (citing *Carley* v. *Zeigler* (1958) 156 Cal.App.2d 643 [320 P.2d 165], and *Scandalis* v. *Jenny* (1933) 132 Cal.App. 307 [22 P.2d 545]). But respondent's own testimony would have supported a determination that he was not negligent. Therefore it was not error to give the instruction.

Appellant contends that the evidence establishes as a matter of law that the applicable prima facie speed limit was 15 miles per hour. ■ The 15-mile-per-hour limit would apply if the view from 100 feet back of Terrace Drive would extend less than 100 feet up Terra Bella (Veh. Code, § 22352, subd. (a)). But there was conflict in the evidence as to whether the view was so restricted. Therefore, it was proper to leave to the jury the question as to which prima facie speed limit applied.

---

[1] "Ordinarily it is necessary to exercise greater caution for the protection and safety of a youth of adolescent years than for an adult person who possesses normal physical and mental faculties. One dealing with such children must anticipate the ordinary behavior of youth of adolescent years. The fact that they usually cannot and do not exercise the same degree of prudence for their own safety as adults, that they often are thoughtless and impulsive, imposes a duty to exercise a proportional vigilance and caution on those dealing with youth of adolescent years, and from whose conduct injury to such a child might result." This instruction is a modification of BAJI 148, substituting "a youth of adolescent years" for the original phrase, "a young child." This substitution was proposed on the authority of *Calandri* v. *Ione Unified School Dist.* (1963) 219 Cal.App.2d 542, 547 [33 Cal.Rptr. 333], and *Guyton* v. *City of Los Angeles* (1959) 174 Cal.App.2d 354, 359 [344 P.2d 910].

The court instructed as follows concerning the possible effect of the jury's determinations as to the degree of darkness at the time of the accident:

"Vehicle Code Section 21201, in force at the time of the accident, reads in part as follows:

"Every bicycle operated upon any highway during darkness shall be equipped with a lamp emitting a white light visible from a distance of 300 feet in front of the bicycle and with a red reflector on the rear of a type approved by the department which shall be visible from a distance of 300 feet to the rear when directly in front of lawful upper beams of headlamps on a motor vehicle. A lamp emitting a red light visible from 300 feet to the rear may be used in addition to the red reflector.

"You are instructed that the word 'darkness' as defined in the Vehicle Code of the State of California is any time from one-half hour after sunset to one-half hour before sunrise and any other time when visibility is not sufficient to render clearly discernible any person or vehicle on the highway at a distance of 500 feet."

Evidence was also admitted on the theory that it might have been "dark" as defined by the California Vehicle Code at the time and site of the accident. Appellant implies that the instructions and evidence erroneously permitted mitigation of respondent's fault in failing to see appellant in time to stop. ■ But the jury was correctly instructed that "darkness" is "any time from one-half hour after sunset to one-half hour before sunrise and any other time when visibility is not sufficient to render clearly discernible any person or vehicle on the highway at a distance of 500 feet." Sunrise was at 6:22 a.m. on the day of the accident; therefore "darkness" as defined by the Vehicle Code would have extended until 5:52 a.m. Respondent testified that he left his house at about a quarter to six, and the accident took place in the same neighborhood; it therefore would have been possible for a jury to conclude on that testimony alone that the accident took place prior to 5:52 and therefore was in "darkness," as defined by the Vehicle Code. Darkness also includes "any other time when visibility is not sufficient"; the accident site was in a hilly area where morning light could briefly be delayed. Therefore instructions based on the theory that darkness may have existed were not improper.

■ ■ The trial court also instructed under Vehicle Code section 21202, which requires bicycles to be operated "as near [to] the right side of the roadway as practicable," advising the jury that if they found a

violation of that requirement a proximate cause of the injury, it would raise a rebuttable presumption of negligence. This was a correct statement of the law. (*Kalfus* v. *Fraze* (1955) 136 Cal.App.2d 415, 433-434 [288 P.2d 967].) Although violation of Vehicle Code section 21202 does not establish negligence as a matter of law in an intersection collision (*Green* v. *Pedigo* (1946) 75 Cal.App.2d 300, 306 [170 P.2d 999]), here there was evidence that appellant entered Terrace Drive from the left side of Terra Bella and that had appellant initiated this turn from what for him would have been the right hand side of Terra Bella the accident might have been avoided. Therefore, it was not error to instruct on the possible effect of the statute requiring bicycles to be operated on the right side of the road.

 Counsel for respondent was allowed over objection to ask several witnesses who had viewed the accident scene immediately after the collision whether, if they had been driving that morning, they would have turned their lights on. The amount of illumination at the time and place of the accident was a highly material issue. It is contended that the questions called for inadmissible speculation. Where a material fact cannot be accurately or adequately stated, a witness's opinion as to what he knows may be received (Witkin, Cal. Evidence (2d ed. 1966) § 390, p. 349). Such evidence has been admitted with regard to speed, distance and size. (*People* v. *Helm* (1907) 152 Cal. 532, 546 [93 P. 99]; *Dean* v. *Feld* (1946) 77 Cal.App.2d 327, 330 [175 P.2d 278]; *Dawson* v. *San Diego Elec. R. Co.* (1927) 82 Cal.App. 141, 151 [255 P. 215].) In other jurisdictions, this rule has received broader development and permits estimates of visibility under various lighting conditions (see 31 Am.Jur.2d, Expert and Opinion Evidence, §§ 155-160, pp. 716-723; 10 A.L.R.3d 258, § 4, p. 263). The nonscientific terms in which illumination must be described are, if anything, less precise than terms referring to speed, distance or size. The average person has some experience with estimating feet, inches, or even miles per hour, but "foot candles" do not come within the same range of experience; an estimate of illumination necessarily has some conclusionary aspect. But the conclusionary aspect of such testimony ought to be kept under reasonable limits. Here both witnesses were able, in other parts of their testimony, to give their recollections of the illumination at the scene of the accident in terms more concrete than whether the witness would, if driving, have been using headlights. The questions complained of thus had the predominant effect not of producing otherwise unavailable information on the conditions of illumination but of bringing before the jury the opinions of the witnesses bearing on the standard of care applicable to both parties to the accident. Under those circumstances, appellant's objections should have been sustained.

The judgment is reversed. The purported appeal from order denying new trial is dismissed.

Devine, P. J., and Rattigan, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied May 28, 1970.