[Civ. No. 7829.   Third Dist.   Jan. 31, 1951.]

FRANK GASKILL et al., Respondents, v. CALAVERAS CEMENT COMPANY (a Corporation) et al., Defendants; PAT L. NOLET et al., Appellants.

Clark & Heafey and Augustin Donovan for Appellants.

Mazzera, Snyder & DeMartini for Respondents.

ADAMS, P. J.—This is an appeal by Pat L. Nolet, W. W. Miles, and K. D. Anderson, copartners doing business as Motor Transport System (hereinafter referred to as M.T.S.), from a judgment entered against M.T.S. and others upon a verdict of a jury in favor of plaintiffs, which judgment awarded said plaintiffs damages in the sum of $18,000 for the death of Effie Mae Gaskill, the wife of Frank Gaskill and mother of the other plaintiffs. Mrs. Gaskill's death resulted from an automobile accident for which defendants LeBrun and Swain admitted responsibility.

The evidence shows that a tractor owned by Swain and operated by defendant LeBrun, which tractor was hauling a trailer and semitrailer rented by Swain but owned by M.T.S., collided with a parked automobile in which Mrs. Gaskill was seated. The sole question presented on this appeal is whether defendants Swain and LeBrun alone are liable, or whether, at the time of the accident, they were employees or agents of M.T.S., thus rendering the said M.T.S. also liable.

It is contended by M.T.S., and by Swain, also, that Swain was an independent contractor and that LeBrun was his employee. The evidence shows that on August 14, 1948, Swain and M.T.S. entered into a written agreement under the terms of which Swain, designated as contractor, represented that he was the owner of a tractor which he would use to pull such equipment as M.T.S., designated as carrier, should from time to time indicate, carrier to designate the equipments, loads and points of origin and destination of such equipment, the hauling to be on carrier's bills of lading. Contractor undertook to furnish his tractor fully equipped, including two sets of air lines, and agreed to assume full responsibility for damages or loss of same due to use, fire or theft, or otherwise, and to hold carrier harmless from any claim by reason of the above. He was also to operate said equipment himself, or to furnish operators, without cost to carrier, to carry in-

surance including a Workmen's Compensation insurance policy covering his employees; and he agreed to hold carrier harmless from any claim arising out of any such employer-employee relationship or for injuries to himself. He also agreed to bear the entire cost of maintenance of his own equipment, and to be responsible to carrier for damage to carrier's equipment from any cause, up to $500 in any one accident. Carrier agreed to bear such cost of maintenance and repair of its own equipment which resulted from reasonable usage, wear and tear.

The contract especially provided that contractor should be deemed to be an independent contractor, maintaining complete control over all equipment used, including driving personnel, hauling or other services; and that carrier should only designate the loads to be made and the places of pickup and delivery, all other matters, unless otherwise provided, to be under the management, control, and supervision of contractor. All taxes or fees were to be paid by contractor, except that any federal transportation tax should be paid by the carrier. Compensation to contractor was to be such as was agreed upon from time to time. Provision was made for cancellation of the agreement by either party on 10 days' written notice.

Thereafter Swain secured from the Public Utilities Commission permission to operate as a highway contract carrier. In the meantime M.T.S., also operating as a contract carrier, secured a contract with Calaveras Cement Company to haul cement to the sites of various projects in the Feather River Canyon. At the time of the accident Swain's tractor, operated by LeBrun, was hauling a trailer and semitrailer rented to Swain by M.T.S. which was on its way to load cement which Swain had undertaken to transport for M.T.S., to assist it in carrying out its contract with the cement company.

Testimony given at the trial showed, without contradiction, that LeBrun was hired and paid by Swain, knew nothing of M.T.S., and received orders from Swain only; also it was shown that M.T.S. never gave Swain instructions as to the route to be followed by him, the manner of operation of the equipment, or as to whom Swain should hire; and after the accident Swain paid costs of repair to the tractor.

Appellant M.T.S. urges on this appeal that the evidence clearly establishes that Swain was an independent contractor, and, accordingly, that it is not liable for damages resulting from the accident.

Respondents contend that Swain and LeBrun were acting as agents of M.T.S. and that, though there was a conflict in the evidence, it is sufficient to establish that relationship. They rely upon testimony that the trailer and semitrailer being hauled by Swain's tractor belonged to M.T.S.; that the tractor and the trailer and semitrailer were of the same color, and all bore the insignia of M.T.S.; that the loads hauled by Swain were on M.T.S. bills of lading, which carried the identifying numbers of each piece of equipment; that on some occasions M.T.S. supplied fuel for operation of the tractor, though the evidence shows without contradiction that deductions were made by it for such fuel on settlement with Swain.

■ We are satisfied that the evidence clearly shows that Swain was not an employee or agent of M.T.S. but was an independent contractor. It shows that, while Swain did not own the trailer and semitrailer which he was using, he paid rental to M.T.S. for their use, the rate of rental being 5.6 cents per mile. Compensation to Swain was made by giving him the amount paid by the cement company for delivery of cement, to wit, 24¢ per hundred, less 10 per cent deducted by M.T.S. Settlements were made every two weeks, and from the amount then due Swain for hauling, M.T.S. deducted the rental charge, the 10 per cent, and the cost of any fuel used by Swain for which M.T.S. might have paid. M.T.S. would, after advice from the cement company, advise Swain as to when he should pick up a load of cement, and where to deliver it, all of the hauling being between San Andreas and two projects in the Feather River Canyon for which the cement company had contracted to furnish the cement. As for the fact that Swain's tractor and the trailers were of the same color it was shown without contradiction that this was a happening only; and testimony was that the initials of M.T.S. were pasted on the tractor as well as the trailers for advertising purposes only. Swain and defendant Anderson of M.T.S. were called by plaintiffs as adverse witnesses, and both testified that M.T.S. had never instructed Swain as to the route to be followed by him, or his manner of operation, or whom he should employ or discharge, nor given him any directions as to his employees; that M.T.S. had never paid Swain any wages, and that Swain had paid for all of his gas and oil; and the agreement between the parties definitely stated that Swain was to be an independent contractor and that no employer-employee relationship should exist.

In *Clarke* v. *Hernandez*, 79 Cal.App.2d 414 [179 P.2d 834], this court decided a comparable case. There copartners doing business as Sunrise Produce Company were appellants after a judgment in favor of plaintiffs against them and Hernandez who was the owner of the truck and trailer which collided with plaintiffs' vehicle causing the injuries for which damages were granted. Hernandez was hauling a load of onions from Coachella to San Francisco for the produce company. He, like Swain, was a licensed contract carrier. The only directions given Hernandez were as to where he was to pick up and where to deliver the onions, compensation to be 75¢ per sack carried. We held that the record did not contain substantial evidence that Hernandez was an employee of appellants, and that the judgment against appellants, based upon the doctrine of *respondeat superior*, lacked evidentiary support; that the right of an employer to exercise complete and authoritative control of the mode and manner of the work to be performed was essential to such a relationship; that Hernandez rendered service for a specified recompense for a specified result, under the control of his principal as to the result of his work only and not as to the means by which such result was accomplished. That case, and numerous like cases there reviewed, are applicable herein, and further citation of authority is unnecessary.

In *Empire Star Mines Co.* v. *California Employment Commission*, 28 Cal.2d 33, 43-44 [168 P.2d 686], the court stated that significant factors in determining the relationship between the parties were the right to discharge at will, without cause, and whether the parties believed they were creating the employer-employee relationship. In the instant case the contract provided that the agreement should continue in full force and effect so long as the requirements thereof were complied with, but that it might be cancelled by either party on 10 days' notice. This negatives any claim that M.T.S. might discharge at will. And that the parties themselves did not intend to or believe that they were creating an employer-employee relationship could hardly have been more strongly expressed than it was in the contract itself.

Respondents also contend that regardless of whether Swain was an independent contractor, M.T.S. should be held liable on the authority of *Taylor* v. *Oakland Scavenger Co.*, 17 Cal.2d 594 [110 P.2d 1044], and section 428 of Restatement of Torts. We do not find them applicable. In the Taylor case the Scavenger Company was operating under a franchise and its

contract with the city of Oakland specifically provided that as a condition of exercising its franchise to collect garbage, it must assume master and servant liability for the acts of persons engaged by it to collect garbage. No such condition governed M.T.S. in the instant case. It operated under a permit as did Swain. The permit issued to M.T.S. is not in the record, and we find nothing in the record or in the law of this state that limited its right to contract as it did with Swain, as an independent contractor, without being liable for injuries to persons which might be occasioned by the negligence of Swain or his employees. It is stated in the opinion in that case (p. 604):

"an employer is generally liable for negligent acts of an employee performed within the scope of employment, but if an independent contractor rather than master and servant relationship exists, the independent contractor usually is alone liable for his negligent acts. If, however, an individual or corporation undertakes to carry on an activity involving possible danger to the public under a license or franchise granted by public authority subject to certain obligations or liabilities imposed by the public authority, these liabilities may not be evaded by delegating performance to an independent contractor."

The court in the case before us instructed the jury that if Swain was an independent contractor M.T.S. was not liable. No objection to that instruction is made.

Section 428 of Restatement of Torts provides:

"An individual or a corporation carrying on an activity which can be lawfully carried on only under a *franchise* granted by public authority and which involves an *unreasonable risk* of harm to others, is subject to liability for bodily harm caused to such others by the negligence of a contractor employed to do work in carrying on the activity." (Italics added.)

█ But the comment thereon is that the rule there stated is principally applicable to public service corporations, which, as such, are permitted by their *franchises* to use instrumentalities which are *peculiarly dangerous unless carefully operated,* and that the rule stated does not apply to the carrying on of activities which involve no special danger and which can be lawfully carried on by private persons without liability for the misconduct of the contractors to whom they are entrusted. In California annotations to section 428 it is said that no California cases applying the rule were found.

126

Furthermore, the activity which Swain was carrying on was not under franchise and was not one involving any unreasonable risk of harm to others. The operation of any motor vehicle may be said to involve some risk to others but the use of Swain's equipment involved no more risk than that of any other.

Section 409 of Restatement of Torts provides that: "Except as stated in sections 410 to 429, the employer of an independent contractor is not subject to liability for bodily harm caused to another by a tortious act or omission of the contractor or his servants." Sections 410 and 429 have no application to the facts in this case.

We are satisfied that the evidence establishes that Swain was an independent contractor, and that LeBrun was the employee of Swain only. It follows that the judgment against M.T.S. must be, and it is reversed.

Peek, J., and Van Dyke, J., concurred.

A petition for a rehearing was denied March 2, 1951, and respondents' petition for a hearing by the Supreme Court was denied March 29, 1951. Carter, J., voted for a hearing.