[Civ. No. 8213.  Third Dist.  May 11, 1953.]

G. G. GILBERT, Appellant, v. RICHARD V. ROGERS et al., Respondents.

Stanley J. Gale for Appellant.

Gerald M. Desmond for Respondents.

VAN DYKE, P. J.—On August 23, 1950, at 1:30 a. m., Ernest A. Boyd, as the employee of Richard V. Rogers, was driving a truck, with trailer attached thereto, northerly on Highway 99. Negligently he drove his rig across the center line into the opposing traffic lane, thereby compelling plaintiff's truck and trailer, going southerly, to swerve in such a way as to overturn and spill its load. At that time defendant and respondent, Constructors Transport Company, a corporation, was a licensed *radial highway common carrier* as defined by section 3516 of the Public Utilities Code. It was also a licensed *highway contract carrier* as defined by section 3517 of said code. Up to midnight of August 22d, Rogers, the negligence of whose driver caused the accident, was a licensed *highway common carrier,* but because he had violated certain provisions of law applying to such carriers his license had been revoked effective at midnight of said day. When the accident occurred Rogers was without a license. Prior to the time of the accident, respondent Constructors Transport Company had contracted with an agency of the United States Government to haul a quantity of cargo for said agency and on August 22d had contracted with Rogers to subhaul a portion thereof. Rogers contracted to furnish for the work his own truck and driver and to haul at a rate fixed and allowed by the Public Utilities Commission. His rig finished its run and Rogers was paid for the haul. Plaintiff-appellant sued for his damages, joining Rogers and respondent Constructors Transport Company. The trial court in effect found that the relationship between Constructors Transport Company and Rogers, according to their contract, was that of employer and independent contractor, and that the contract between them was conformable to the authority and permits issued the carriers by the Public Utilities Commission. The trial court fixed the damages at $10,520.90, and gave judgment in favor of plaintiff and against Boyd and Rogers; but held that plaintiff was entitled to nothing as against Constructors Transport Company. Plaintiff has appealed from that part of the judgment which denied him recovery against Constructors Transport Company.

This appeal presents primarily the question of whether or not a *radial highway common carrier* which has sublet a

portion of a contract for hauling freight on the highways to an independent contractor, a *highway common carrier*, is liable to the public for, damages caused by the negligence of the independent contractor.

At the time the cause was decided in the trial court this court had rendered its decision in *Gaskill* v. *Calaveras Cement Co.*, 102 Cal.App.2d 120 [226 P.2d 633], and the Supreme Court had denied a hearing. While this case has been pending on appeal the Supreme Court rendered its decision in *Eli* v. *Murphy*, 39 Cal.2d 598 [248 P.2d 756]. Therein it held that a highway common carrier, licensed and regulated by the Public Utilities Commission under the Public Utilities Act, came within the rule enunciated in section 428 of the Restatement of Torts. That rule is there stated as follows:

"An individual or a corporation carrying on an activity which can be lawfully carried on only under a franchise granted by public authority and which involves an unreasonable risk of harm to others, is subject to liability for bodily harm caused to such others by the negligence of a contractor employed to do work in carrying on the activity."

The Supreme Court said this common law principle had frequently been applied to impose liability on franchised common carriers who had engaged independent contractors to transport goods over the public highways and that it was applicable to the highway common carrier involved so that it was liable for injuries caused by the tort of its independent contractor, the subhauler. The court stated the highway common carrier was engaged in a business attended with a very considerable risk; that the Legislature had subjected it and similar carriers to the full regulatory power of the commission to protect the safety of the general public, the effectiveness of which regulation would be impaired if the carrier conducted its business through independent contractors over whom it had no control; that to permit it through that device to escape liability for negligence of the subcontractors would reduce the incentive for careful supervision of its business and deprive injured members of the public of the financial responsibility of the licensee. Said the court: "Accordingly, both to protect the public from financially irresponsible contractors, and to strengthen safety regulations, it is necessary to treat the carrier's duties as nondelegable."

It seems to us that the reasoning in *Eli* v. *Murphy* is equally applicable to radial highway common carriers and also to

highway contract carriers, both of which classes are licensed to transport freight upon the public highways by the Public Utilities Commission under the provisions of the Highway Carriers' Act. (§§ 3501-3809.) These carriers are individuals or corporations carrying on an activity which can be lawfully carried on only under a franchise granted by public authority. To carry on this activity involves a very considerable risk to the public and, indeed, involves the same risk as that arising from the operations of the highway common carriers who receive their licenses from the same commission, but under the provisions of the Public Utilities Act. The rigs used by the radial carriers and the contract carriers to carry out these activities are comparable to those used by the highway common carriers. The truck and trailer involved in this accident was 64 feet in over-all length, carried a cargo of 44,000 pounds, and rig and cargo grossed 62,000 pounds in weight. At the time of the accident it was traveling 45 to 50 miles per hour. As indicating the similarity of the activities carried on by the three classes of carriers they all are licensed in like language to engage in the business of transporting freight over the public highways. Division 1 of the Public Utilities Code is entitled "Regulation of Public Utilities." Division 2 of the same code is entitled "Regulation of Related Businesses by the Public Utilities Commission." Highway common carriers are licensed and regulated under the first division. Radial highway common carriers and highway contract carriers are regulated under the second division. That the regulation of those engaged in the business of carrying on the activities for which all three classifications are licensed is a material concern of the Legislature is indicated by the foregoing, and by the fact that the regulation of all are placed under the same regulatory power. Although the Public Utilities Commission may not, as yet, have issued regulatory orders to the radial carriers and the contract carriers, having the full scope of those issued to the highway common carriers, it has the power to do so. The regulation of all three classes includes the fixing of the rates they are permitted to charge and safety rules they must obey. All three classes are required to furnish security for the payment of damages to members of the public arising from their activities. There seems to be good reason why, if the duties of one class are nondelegable, those of the other two classes are equally so.

However, the Supreme Court in *Eli* v. *Murphy, supra,* did not disapprove the holding of this court in *Gaskill* v.

*Calaveras Cement Co., supra.* It distinguished the two decisions. Although applying the rule of nondelegable duty to highway common carriers, it declared the rule not applicable to the employing carrier involved in the Gaskill case. It said: "In that case, however, both the defendant and the independent contractor stood on an equal footing as contract carriers operating under permits from the Public Utilities Commission. Such carriers are not required to secure certificates of public convenience and necessity and they are not subject to the safety regulations the commission may establish for highway common carriers. They are entitled to permits as a matter of right on complying with the statutory provisions. (Pub. Util. Code, § 3572.) Thus the carriers in that case [the Gaskill case] were engaged in a business open to all, and accordingly, the principle enunciated in section 428 of the Restatement of Torts was inapplicable." To us the distinction is not convincing. No one can engage in the transportation of freight over the public highways except by license from the Public Utilities Commission. This grant of authority anyone must have if he desires to carry on those activities. We think the factor of control by the commission is important, notwithstanding both radial highway common carriers and highway contract carriers are entitled to their permits as a matter of right upon making the statutory showing to the commission by petition therefor. They may obtain their permits as a matter of right upon meeting the statutory conditions, but they can retain them only by obeying the regulations of the commission. Nor does it seem to us that it can be said such carriers are engaged in a business open to all. It may be true, as stated by the Supreme Court, that the Legislature has exhibited special concern over highway common carriers and has classified them apart from other highway carriers, but certainly it has exhibited no lack of concern with respect to the safety of the operations of the latter.

If the question were open to us, therefore, we would for the reasons given and in view of the Supreme Court's holding as to highway common carriers, hold that all three classes of carriers performed nondelegable duties and that none of them could insulate themselves from liability for negligence occurring in the course of their business by engaging independent contractors to transport freight for them. But as we read *Eli* v. *Murphy, supra,* the question is not open. While the respondent carrier, held by the trial court in this case to have successfully insulated itself through the medium of an

independent contractor, possessed both a radial and a contract hauling permit at the time it engaged Rogers to haul freight over the highway, and while the carrier involved in the Gaskill case was a contract carrier, we are not able to perceive any distinction between these two classes of carriers. Both receive their permits and both are regulated under the provisions of the Highway Carriers' Act. Both are common carriers as that term is generically understood. By section 3571 of the code it is provided that neither shall engage in business without first obtaining from the commission a permit authorizing it to do so and the section which governs the securing of such permit, that is 3572, applies to both without distinction. · Upon the mere filing of the petition either class must be given the required permit. Throughout, the provisions contained in the Highway Carriers' Act, addressed to the subject of regulating these two classes of carriers, make no distinction between them; and, as we have seen, both types of permit are sometimes granted to a single carrier. In this case respondent carrier had both types of permit. As we read *Eli* v. *Murphy,* we are thereby bound to hold that the respondent carrier, a radial highway common carrier, was not, in the course of its business performing activities giving rise to nondelegable duties, and therefore we must uphold the decision of the trial court that it was not responsible for the tortious conduct of its independent contractor, the subhauler.

Appellant urges that the fact that the subhauler, a licensed highway common carrier, had failed for the requisite length of time to keep in force security for the payment of claims arising by negligent conduct, coupled with the fact that an hour or two before the accident happened the license had been revoked compels a holding that respondent carrier was liable. We think this contention cannot be sustained. The record shows that respondent carrier had no information as to the defaults of its contractor when it made the contract. It is also stated in the record that when it made the contract it made no inquiry concerning such matters. We do not think that it was required to do so. Its contractor was at that time a licensed highway common carrier, and we think that it was under no duty to ascertain more than that, in order to validly contract, and having thus validly contracted it cannot be held liable for the torts of its independent contractor.

That part of the judgment appealed from, which denies recovery against the respondent carrier, Constructors Transport Company, a corporation, is affirmed.

Peek, J., and Schottky, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 9, 1953. Carter, J., was of the opinion that the petition should be granted.