[No. B175433. Second Dist., Div. Two. Nov. 1, 2004.]

HILL BROTHERS CHEMICAL COMPANY, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
ROBIN LORENTSEN et al., Real Parties in Interest.

## COUNSEL

Ford, Walker, Haggerty & Behar and DeAnn Flores Chase for Petitioner.

No appearances for Respondent.

R. Rex Parris Law Firm, Robert A. Parris, James S. Kostas and Scott J. Idleman for Real Parties in Interest.

## OPINION

**DOI TODD, J.**—Hill Brothers Chemical Company (Hill Brothers), defendant in a wrongful death action, petitions for relief from the trial court's denial of its motion for summary judgment. The issue before us is whether Hill Brothers, licensed as a private motor carrier under the Vehicle Code, has a nondelegable duty to the public and is therefore liable for the negligent acts of a for-hire motor carrier of property it hired as an independent contractor to transport its goods. We find no such duty and grant the petition for writ of mandate.

## FACTUAL AND PROCEDURAL BACKGROUND

Hill Brothers, a chemical company, has a fleet of trucks and other vehicles which it uses to deliver its products to its customers. The vehicles qualify as "commercial motor vehicles" within the meaning of the Motor Carriers of Property Permit Act (MCPPA) (Veh. Code, § 34600 et seq.)[1] Hill Brothers is a "private carrier" as that term is used in the MCPPA and operates under a "Motor Carrier Permit" issued by the California Department of Motor Vehicles (DMV).

In November 2002, Hill Brothers hired MJF Equipment Transport (MJF), an independent contractor, to transport materials from one of its suppliers to its processing plant. At the time, MJF had been hauling approximately 10 such loads every month for Hill Brothers. MJF is a "for-hire motor carrier of property" as that term is used in the MCPPA, and operates under a permit issued by the DMV to transport goods for compensation.

While MJF's tractor-trailer was being driven by an MJF employee for the Hill Brothers delivery, it collided with a vehicle being driven by Jimmie Lorentsen, who died as a result of the collision. Lorentsen's heirs, real parties in interest here, filed a wrongful death action against MJF and the MJF driver. They later added Hill Brothers as a defendant on the theory that, as a motor carrier of property operating under a permit issued by the DMV, it had a nondelegable duty to the public and was therefore vicariously liable for the negligent acts of MJF and the MJF driver.[2]

Hill Brothers moved for summary judgment on the ground that it owed no duty to Lorentsen as a matter of law because no exception could be established to the general rules of nonliability for the negligent conduct of an independent contractor. The trial court disagreed, and, relying on *Serna v. Pettey Leach Trucking, Inc.* (2003) 110 Cal.App.4th 1475 [2 Cal.Rptr.3d 835], held that Hill Brothers was subject to a nondelegable duty and was therefore vicariously liable for the negligent acts of MJF. Hill Brothers seeks review of that order.

## DISCUSSION

Hill Brothers contends that because it is a "private carrier" rather than a "for-hire motor carrier of property," it cannot be held vicariously liable for the negligent acts of an independent contractor. Real parties contend that because Hill Brothers operates under a permit issued by the DMV and is

---

[1] Statutory references shall be to the Vehicle Code unless otherwise noted.

[2] No other basis of liability was ever asserted against Hill Brothers.

regulated under the MCPPA, it cannot delegate its duties to an independent contractor and escape liability for the negligent acts of an independent contractor.

### A. *Standard of Review.*

■ An order denying a motion for summary judgment may be reviewed by a petition for writ of mandate. (Code Civ. Proc., § 437c, subd. (m)(1).) Where the trial court's denial of a motion for summary judgment will result in a trial on nonactionable claims, a writ of mandate will issue. (*Lompoc Unified School Dist. v. Superior Court* (1993) 20 Cal.App.4th 1688, 1692 [26 Cal.Rptr.2d 122].)

■ We review an order denying a motion for summary judgment de novo. (*Edward Fineman Co. v. Superior Court* (1998) 66 Cal.App.4th 1110, 1116 [78 Cal.Rptr.2d 478].) Summary judgment is properly granted when the papers show there is no triable issue of material fact, and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (o)(2).) Issues of law, including statutory construction and the application of that construction to a set of undisputed facts, are subject to this court's independent review. (*Twedt v. Franklin* (2003) 109 Cal.App.4th 413, 417 [134 Cal.Rptr.2d 740].)

### B. *Hill Brothers' Licensing Under the MCPPA.*

With the adoption of the MCPPA in 1996, responsibility for the regulation of motor carriers of property in California was transferred from the Public Utilities Commission (PUC) to the DMV and the California Highway Patrol (CHP). The DMV is now responsible for the development and enforcement of the MCPPA and is required to promulgate necessary regulations, while the CHP is responsible for motor vehicle safety regulations. (§§ 34601, 34604, 34623, subd. (a).)

■ Section 34601 of the MCPPA provides that "any person who operates any commercial motor vehicle" is classified as a "motor carrier of property." Motor carriers of property are divided into two categories: "for-hire motor carrier of property" and "private carriers." A "for-hire motor carrier of property" is defined as a motor carrier "who transports property for compensation." (§ 34601, subd. (b).) A "private carrier" is defined as a motor carrier "who transports only his or her own property, including, but not limited to, the delivery of goods sold by that carrier." (§ 34601, subd. (d).)

Hill Brothers is licensed as a "private carrier" under subdivision (d) of section 34601.

C. *No Legislative Intent Has Been Shown That Private Carriers Should Be Subject to the Nondelegable Duty Rule.*

The premise of real parties' argument is that because the MCPPA classifies all carriers as motor carriers of property, and because "private carriers" are subject to regulatory and permit requirements under the MCPPA, it is clear that the Legislature intended that all carriers be treated alike with respect to their responsibilities to the public. But nothing in the language of the MCPPA or its legislative history supports this conclusion.

Prior to the passage of the MCPPA in 1996, the PUC regulated trucking companies under the Public Utilities Act (PUA). Subject to certain exceptions, the PUA defined "highway carrier" to mean a person or corporation "engaged in transportation of property for compensation or hire as a business over any public highway in this state by means of a motor vehicle." (Pub. Util. Code, former § 3511.) Three types of operating authority were established under the PUA for such "for hire" highway carriers.

■ The *highway common carrier* was defined as a public utility engaged in the transportation of property on the highways and was regulated as a public utility. The highway common carrier dedicated its facilities to the public and ordinarily operated between fixed termini or over regular routes. It was required to have a certificate of public convenience and necessity from the PUC. (Former Pub. Util. Code, §§ 213, 215, 3513.)

■ The *radial highway common carrier* engaged in the transportation of property on the highways but was not regulated as a public utility. The principal difference between a highway common carrier and a radial highway common carrier was that the latter did not operate between fixed termini or over regular routes, and it established its own rates until rates were fixed by the PUC. A radial highway common carrier was not required to have a certificate of public convenience and necessity, but was required to have a permit. (Former Pub. Util. Code, § 3516.)

■ The *highway contract carrier* engaged in the transportation of property on the highways for selected shippers under a contract, but did not dedicate its facilities to the public. The highway contract carrier was required to have a permit, but not a certificate of public convenience and necessity. Until fixed by the PUC, it established its own rates. (Former Pub. Util. Code, § 3517.)

Highway common carriers were licensed and regulated under division 1 of the PUA which was entitled "Regulation of Public Utilities." (Former Pub. Util. Code, § 1061.) Radial highway common carriers and highway contract carriers were licensed and regulated under division 2 which was entitled

"Regulation of Related Businesses by the Public Utilities Commission." (Former Pub. Util. Code, §§ 3516, 3517, 3541.)

Persons or corporations transporting their own property were specifically excluded from the definition of a "highway carrier," and the term "private carrier" was separately defined as a "not-for-hire" motor carrier. (Former Pub. Util. Code, §§ 4001, subd. (a), 5353, subd. (c).)

As can be seen, prior to the passage of the MCPPA, persons or corporations transporting their own property were specifically excluded from the definition of a "highway carrier," and the term "private carrier" was separately defined as a "not-for-hire" motor carrier. Under the MCPPA, "for hire" and "private" carriers continue to be separately defined. In an analysis of the MCPPA as Assembly Bill No. 1683, private carriers were described as "registered with but non regulated by the PUC, who operate truck fleets incidental to their main business." (Gov. Affairs Consulting, analysis of Assem. Bill No. 1683 (1995–1996 Reg. Sess.) June 26, 1995.)

In "clean up" legislation passed in 1997, the Legislature expressed concern that the difference between "for-hire" and "private" carriers should be more explicitly stated. The Assembly Committee on Transportation reported that one of the purposes of the bill was to "[c]larify the definitions of 'motor carrier of property' and 'private carrier', the latter being a carrier who does not transport goods or property for compensation." (Assem. Com. on Transportation, Rep. on Assem. Bill No. 1518 (1997–1998 Reg. Sess.) as amended July 2, 1997.)

In 2000, the definition of "private carrier" was further clarified. In a Senate Committee Report, the MCPPA was described as providing for "the regulation of certain for-hire motor carriers of property," and the Legislature's intent was stated to be to "delete the obsolete statutory references and definitions relating to specified motor carriers in the Act." (Sen. Com. on Transportation, Rep. on Sen. Bill No. 1404 (1999–2000 Reg. Sess.) as amended Aug. 24, 2000.) The report went on to state: "Currently, a 'private carrier' is defined by what the carrier does not do, rather than what is done. This bill seeks to define private carriers in positive language, and to clarify that delivery of merchandise is private carriage (or private property), if the merchandise was sold to the receiver by the motor carrier." (*Ibid.*)

The statutory language of the MCPPA, together with the legislative materials, evidence legislative intent to maintain a distinction between private carriers and for-hire carriers. Legislative history does not support real parties' assertion that simply because private carriers are subject to regulatory and permit requirements, they should be subject to the nondelegable duty rule.

### D. *Case Law Does Not Support Imposing the Nondelegable Duty Rule on Private Carriers Operating Under a Permit.*

While not disputing that Hill Brothers is a "private carrier" under the MCPPA, real parties contend that because Hill Brothers is regulated under the MCPPA, it cannot delegate its duties to independent contractors so as to be shielded from liability for their negligence.

■ The general rule is that one is not liable for the negligent acts of an independent contractor one hires. (*Fonseca v. County of Orange* (1972) 28 Cal.App.3d 361, 364 [104 Cal.Rptr. 566].) But exceptions to this rule have been well developed in California. Relying on section 428 of the Restatement of Torts,[3] the Supreme Court ruled in *Taylor v. Oakland Scavenger Co.* (1941) 17 Cal.2d 594, 604 [110 P.2d 1044], that if "an individual or corporation undertakes to carry on an activity involving possible danger to the public under a license or franchise granted by public authority subject to certain obligations or liabilities imposed by the public authority, these liabilities may not be evaded by delegating performance to an independent contractor. The original contractor remains subject to liability for harm caused by the negligence of the independent contractor employed to do the work."

This rule of nondelegable duty was applied to a highway common carrier in *Eli v. Murphy* (1952) 39 Cal.2d 598 [248 P.2d 756]. The Supreme Court ruled that "under both the common law and certain regulations of the [PUC], . . . a highway common carrier, could not delegate its duties to an independent contractor so as to escape liability for [its] negligent performance." (*Id.* at p. 599.) The court explained: "a highway common carrier, is engaged in a 'business attended with very considerable risk' [citations], and the Legislature has subjected it and similar carriers to the full regulatory power of the [PUC] to protect the safety of the general public. [Citations.] The effectiveness of safety regulations is necessarily impaired if a carrier conducts its business by engaging independent contractors over whom it exercises no control. If by the same device it could escape liability for the negligent conduct of its contractors, not only would the incentive for careful supervision of its business be reduced, but members of the public who are injured would be deprived of the financial responsibility of those who had been granted the privilege of conducting their business over the public highways. Accordingly, both to

---

[3] Section 428 of the Restatement of Torts provided: "An individual or a corporation carrying on an activity which can be lawfully carried on only under a franchise granted by public authority and which involves an unreasonable risk of harm to others, is subject to liability for physical harm caused to such others by the negligence of a contractor employed to do work in carrying on the activity." There was no change in language in section 428 in Restatement Second of Torts.

protect the public from financially irresponsible contractors, and to strengthen safety regulations, it is necessary to treat the carrier's duties as nondelegable. [Citations.] [¶] . . . [¶] The Legislature has . . . classified highway common carriers . . . apart from others, and by so doing has indicated special concern with the safety of their operations. . . . [¶] . . . [¶] . . . Highway common carriers may not, therefore, insulate themselves from liability for negligence occurring in the conduct of their business by engaging independent contractors to transport freight for them." (*Eli v. Murphy, supra,* 39 Cal.2d at pp. 599–601.)

The court in *Eli* noted the distinction between a carrier licensed as a public utility and one that operated under a permit: " 'It is our conclusion that any trucking company, upon becoming a public utility under the Public Utility Act, should be expected to exhibit a high degree of performance in the field of safety and should expect to be required to observe rigid safety rules and regulations.' (General Order No. 99, 51 Cal. P.U.C. 66, 68–69.)" (*Eli v. Murphy, supra,* 39 Cal.2d at p. 601.)

A nondelegable duty was found to exist even when a PUC-licensed highway common carrier hires another PUC-licensed highway common carrier as an independent contractor to subhaul freight. (*Gamboa v. Conti Trucking, Inc.* (1993) 19 Cal.App.4th 663, 666–668 [23 Cal.Rptr.2d 564].) Thus, in *Serna v. Pettey Leach Trucking, Inc., supra,* 110 Cal.App.4th 1475, an interstate carrier, licensed by the Surface Transportation Board (formerly the Interstate Commerce Commission), was found to have such a nondelegable duty to the public and was therefore found to have vicarious liability for the negligent acts of an interstate carrier it hired as an independent contractor to transport a load it had been hired to haul.

But the courts have not applied the rule of nondelegability to every highway carrier. For example, in *Gaskill v. Calaveras Cement Co.* (1951) 102 Cal.App.2d 120 [226 P.2d 633], the Court of Appeal did not extend the *Taylor* rule to a contract carrier who was operating under a *permit* rather than a franchise. The *Gaskill* court further distinguished the circumstances from those in *Taylor* and under section 428 of the Restatement of Torts, finding that the activity of hauling a trailer and semitrailer by tractor did not involve any unreasonable risk of harm to others: "The operation of any motor vehicle may be said to involve some risk to others but the use of [this independent contractor's] equipment involved no more risk than that of any other." (*Gaskill,* at p. 126.)

In *Gilbert v. Rogers* (1953) 117 Cal.App.2d 712 [256 P.2d 574], the issue before the court was whether a radial highway common carrier should be vicariously liable for the negligence of a common carrier to whom it had

sublet a portion of a hauling contract. The court reasoned that *Eli* should be applicable to a radial common carrier because the rigs used by them and by contract carriers to haul freight were comparable to those used by highway common carriers, and all classes of carriers were licensed to transport freight on the public highways by the PUC. (*Id.* at pp. 714–715.) But the court nevertheless found that it was bound by the distinction set forth in *Eli,* and held that the radial highway common carrier had "successfully insulated itself through the medium of an independent contractor" because both the carrier and the subhauler operated pursuant to permits, not franchises. (*Id.* at pp. 716–717.)

▮ In any event, all of the cases in which a nondelegable duty has been imposed on a carrier have involved a "for-hire" carrier rather than a private carrier such as Hill Brothers. Hill Brothers argues that there is a critical difference between those who use the public highways as a business and those who use the highways only to transport their own products incidental to their business, and that the latter constitutes private carriage as a matter of right which is not subject to the same level of regulation as that of for-hire carriage. We agree.

### E. *Public Policy Does Not Support Extension of the Nondelegable Duty to Private Carriers.*

▮ Real parties contend that the fact that both private and for-hire carriers are regulated entities supports imposition of equal responsibilities on both. But it is clear that a greater standard of responsibility has been imposed upon those who hold themselves out to the public as being engaged in the business of transporting goods for compensation on the public highways. (See *Eli v. Murphy, supra,* 39 Cal.2d 598, 600–601; Civ. Code, § 2168 et seq.) Hill Brothers was neither licensed as a for-hire carrier, nor acting as a for-hire carrier when it hired an independent contractor to carry goods for the operation of its own chemical manufacturing business. Indeed, Hill Brothers was a consumer of the services of a for-hire carrier just as any other private member of the public might be.

Extension of the nondelegable duty rule to a member of the shipping public simply because the shipper is a private carrier and owns commercial vehicles it uses in its own business makes no sense at all. Such a rule would impose vicarious liability on the part of a shipper for the negligence of an independent contractor for matters over which it exercises no control. We do not believe that imposing such a duty is necessary to address the other concerns expressed by the court in *Eli.* It would certainly increase the cost of doing business in California, particularly the cost of insurance, and would effectively spread risk to a party without consideration of fault and without a sound policy basis.

■ We therefore hold that a private carrier is not vicariously liable for the negligent acts of its independent contractor.

## DISPOSITION

Let a peremptory writ of mandate issue directing respondent court to vacate its order denying the motion for summary judgment in favor of Hill Brothers, and to enter a new order granting the motion. The temporary stay order is vacated. Hill Brothers is awarded costs in this original proceeding.

Boren, P. J., and Ashmann-Gerst, J., concurred.

The petition of real parties in interest for review by the Supreme Court was denied February 2, 2005.