JOHNSON, J.
*240 Belinda Reyes (Reyes), a Home Depot asset protection specialist, and Clifton *906 Roth (Roth), a sales associate, watched Kevin Mireles (Mireles) place a universal product code (UPC) sticker for a $4.47 bottle of roach killer on a $39.98 bottle of weed killer, pay $4.47 at a self-checkout station for the $39.98 product, and walk out of the store. Reyes and Roth followed Mireles outside, where Reyes confronted Mireles and a scuffle ensued. Police arrested Mireles; the People charged him with, and a jury convicted him of, second degree robbery under Penal Code section 212.5, subdivision (c),[1] as construed in People v. Estes (1983) 147 Cal.App.3d 23, 194 Cal.Rptr. 909.
Mireles appeals from his robbery conviction. He contends the trial court improperly excluded evidence of a prosecution witness's prior felony convictions and improperly admitted evidence of Mireles's prior criminal conduct in violation of Evidence Code section 352, the trial court improperly admitted testimony from an undisclosed rebuttal witness contrary to Penal Code section 1054.1, and the cumulative effect of the trial court's errors deprived him of a fair trial. We requested supplemental briefing from the parties as to whether Mireles's conduct as charged and tried could constitute robbery in light of People v. Williams (2013) 57 Cal.4th 776, 161 Cal.Rptr.3d 81, 305 P.3d 1241 ( Williams ).
We hold that Mireles's conduct constitutes robbery and that the trial court did not err with respect to the challenged evidentiary and discovery rulings. Accordingly, we affirm.
BACKGROUND
I. The robbery
On August 18, 2015, Mireles entered a Home Depot store in Signal Hill. Reyes watched Mireles take a bottle of weed killer-a "high-theft" item-from the shelf, pull a UPC sticker from his pocket, put it on the weed killer bottle, and scan the bottle at a self-checkout station. The $39.98 bottle of weed killer scanned for $4.47. Mireles paid the $4.47 and exited the store.
Reyes asked Roth to accompany her as an "approach witness" as she followed Mireles from the store and confronted him about the theft. Reyes identified herself to Mireles as "loss prevention" and told him to return the weed killer. When Mireles did not comply, Reyes reached for Mireles's hand *241 and Mireles swung his closed fist at Reyes. Dennis Bott (Bott) approached the Home Depot entrance just as the confrontation unfolded. Bott put his cane around Mireles and restrained him until police arrived.
II. The trial
The People charged Mireles with one count of second degree robbery under section 212.5, subdivision (c). Mireles pleaded not guilty, and the case proceeded to a jury trial on July 20, 21, and 22, 2016.
At trial, the court granted the People's motion to preclude evidence of Bott's past criminal conduct and denied Mireles's motion to preclude evidence of Mireles's past criminal conduct. The court admitted evidence detailing Mireles's past criminal conduct. Additionally, the trial court allowed Roth to testify for the prosecution as a rebuttal witness over Mireles's objection that the People had not earlier identified Roth as a potential witness. Mireles testified on his own behalf. While he admitted to stealing the bottle of weed killer, Mireles disputed using any "force, fear, or *907 intimidation to get away with the weed killer."
The jury found Mireles guilty of second degree robbery. The trial court placed Mireles on formal probation for three years with various conditions, including 90 days in county jail with credit for time served and good behavior, and 60 days of Caltrans work. Mireles timely appealed.
DISCUSSION
I. Mireles was properly convicted of robbery
Mireles argues that under the teaching of Williams , supra , 57 Cal.4th 776, 161 Cal.Rptr.3d 81, 305 P.3d 1241, his crime was not theft by larceny, but theft by false pretenses. As a theft by false pretenses is not a " 'felonious taking,' " Mireles contends that the People failed to prove one of the essential elements of robbery[2] and, as a result, his conviction must be reversed. As discussed below, we disagree.
A. STANDARD OF REVIEW
It is undisputed that Mireles "knowingly and purposefully" placed a UPC sticker from another product on the bottle of weed killer and purchased the *242 $39.98 bottle of weed killer for $4.47-he plainly and repeatedly admitted to doing so at trial. Accordingly, the question before us is whether Mireles's conduct constituted theft by larceny (the theory on which the trial court instructed the jury), or theft by false pretenses. "Issues of law, including statutory construction and the application of that construction to a set of undisputed facts, are subject to this court's independent review." ( Hill Brothers Chemical Co. v. Superior Court (2004) 123 Cal.App.4th 1001, 1005, 20 Cal.Rptr.3d 530.)
B. THEFT BY LARCENY VERSUS THEFT BY FALSE PRETENSES
1. Theft by larceny
"The elements of theft by larceny are well settled: the offense is committed by every person who (1) takes possession (2) of personal property (3) owned or possessed by another, (4) by means of trespass and (5) with intent to steal the property, and (6) carries the property away." ( People v. Davis (1998) 19 Cal.4th 301, 305, 79 Cal.Rptr.2d 295, 965 P.2d 1165 ( Davis ).) "The act of taking personal property from the possession of another is always a trespass unless the owner consents to the taking freely and unconditionally or the taker has a legal right to take the property." ( Ibid ., fns. omitted, italics added.) "And if the taking has begun, the slightest movement of the property constitutes a carrying away or asportation." ( Ibid . )
2. Theft by false pretenses
"[T]heft by false pretenses involves the consensual transfer of possession as well as title of property ; therefore, it cannot be committed by trespass." ( Williams , supra , 57 Cal.4th at p. 788, 161 Cal.Rptr.3d 81, 305 P.3d 1241, second italics added.) As our Supreme Court has explained, "the acquisition of title involved in the crime of theft by false pretenses precludes a trespass [or theft by larceny] from occurring." ( Id . at p. 789, 161 Cal.Rptr.3d 81, 305 P.3d 1241.) In addition, "theft by false pretenses, unlike larceny, has no requirement of asportation." ( Id . at p. 787, 161 Cal.Rptr.3d 81, 305 P.3d 1241, italics omitted.) "The offense requires only that '(1) the defendant made a false pretense *908 or representation to the owner of property; (2) with the intent to defraud the owner of that property; and (3) the owner transferred the property to the defendant in reliance on the representation.' [Citation.] The crime of theft by false pretenses ends at the moment title to the property is acquired." ( Ibid . )
3. Distinguishing between theft by larceny and theft by false pretenses
The differences between theft by larceny and theft by false pretenses are illustrated by two decisions by our Supreme Court: Davis , supra , 19 Cal.4th 301, 79 Cal.Rptr.2d 295, 965 P.2d 1165 ; and Williams , supra , 57 Cal.4th 776, 161 Cal.Rptr.3d 81, 305 P.3d 1241.
*243 In Davis , supra , 19 Cal.4th 301, 79 Cal.Rptr.2d 295, 965 P.2d 1165, the defendant took a shirt from its hanger in a department store, carried it to the sales counter, falsely claimed to have purchased it earlier, requested a refund, and was issued a voucher for credit in the store. By the time the defendant approached the cashier, however, the store's security guards had discovered his activities. While the cashier issued the voucher, she did so at the guards' instruction and with their awareness of the intended crime. ( Id . at p. 303, 79 Cal.Rptr.2d 295, 965 P.2d 1165.) Although the defendant had intended to use deception to obtain both possession and ownership of the credit voucher, he was convicted of theft by larceny, not theft by false pretenses. ( Ibid . ) On appeal, the defendant sought to divide his crime into two acts: (1) his removal of the shirt from its hanger and taking it to the cashier and (2) his false representation to the cashier and acceptance of the voucher. He then argued that the element of trespass was absent because the store issued the voucher while aware of his fraud. In affirming the larceny conviction, Justice Mosk wrote for a unanimous court that the defendant's argument "focuses on the wrong issue of consent.... [¶] ... [T]he question is whether [the store] consented to [defendant's] taking the shirt in the first instance." ( Id . at p. 306, 79 Cal.Rptr.2d 295, 965 P.2d 1165.) Disregarding the latter portion of the transaction, the court found that defendant's taking the shirt from a hanger with the intent to steal it was trespass. Although recognizing department stores are ordinarily presumed to consent to customers' carrying items for sale within the store, Davis emphasized that there was no consent to such transport if committed with a larcenous intent: "[A] self-service store ... impliedly consents to a customer's picking up and handling an item displayed for sale and carrying it from the display area to a sales counter with the intent of purchasing it; the store manifestly does not consent, however, to a customer's removing an item from a shelf or hanger if the customer's intent in taking possession of the item is to steal it." ( Ibid . )
In Williams , supra , 57 Cal.4th 776, 161 Cal.Rptr.3d 81, 305 P.3d 1241, our Supreme Court once again focused on the issue of consent. In that case, the defendant Williams used a credit card that had been "re-encoded with a third party's credit card information" to purchase a gift card from a novice Walmart cashier, who did not know that such purchases were against company policy-Walmart prohibited the use of credit cards for purchases of gift cards. ( Id . at pp. 780, 791-792, 161 Cal.Rptr.3d 81, 305 P.3d 1241.) After Walmart "permitted" the defendant to keep the first gift card, he tried to purchase more gift cards at a different register; as a result, he came under the scrutiny of the store's loss prevention personnel. ( Id . at p. 780, 161 Cal.Rptr.3d 81, 305 P.3d 1241.) Security guards eventually confronted the defendant; they pointed out to him that the number on his credit card did not match *909 the credit card number on the sales receipt. When the guards attempted to detain the defendant, he pushed past them and ran. He was ultimately apprehended and convicted of robbery, burglary, theft by false pretenses, and other crimes. ( Ibid . ) On appeal, the defendant contended his robbery conviction should be reversed because *244 robbery requires theft by larceny, not false pretenses. ( Id . at p. 781, 161 Cal.Rptr.3d 81, 305 P.3d 1241.) Our Supreme Court agreed. In explaining its acceptance of the defendant's position, Williams relied in part on robbery's requirement of a trespassory taking, which is absent in a theft by false pretenses. "[T]heft by false pretenses involves the consensual transfer of possession as well as title of property; therefore, it cannot be committed by trespass. ... [citation] ... [Citation.] ... [¶] ... [D]efendant did not commit larceny. Walmart, through its store employees, consented to transferring title to the gift cards to defendant. Defendant acquired ownership of the gift cards through his false representation, on which Walmart relied, that he was using valid payment cards to purchase the gift cards. ... Because a 'felonious taking,' as required in California's robbery statute [citation], must be without the consent of the property owner, ... [citations], and Walmart consented to the sale of the gift cards, defendant did not commit a trespassory (nonconsensual) taking, and hence did not commit robbery." ( Id . at p. 788, 161 Cal.Rptr.3d 81, 305 P.3d 1241, third italics added.)
C. MIRELES COMMITTED THEFT BY LARCENY
Like the defendant in Davis , supra , 19 Cal.4th 301, 79 Cal.Rptr.2d 295, 965 P.2d 1165, Mireles contemplated a two-step crime-he picked up the bottle of weed killer with the intent to steal it and then placed the UPC sticker for the roach killer product on the bottle and scanned that UPC-not the UPC for the weed killer-at the self-checkout counter. As Davis holds, while a retail store such as Home Depot, is ordinarily deemed to consent to its customers' handling of the goods for sale, such consent does not extend to handling them with the intent of stealing. ( Id . at p. 306, 79 Cal.Rptr.2d 295, 965 P.2d 1165.) In contrast to Walmart in Williams , supra , 57 Cal.4th 776, 161 Cal.Rptr.3d 81, 305 P.3d 1241, Home Depot did not consent at any time to Mireles's purchase of the $39.98 bottle of weed killer for $4.47. There was never, in other words, a "meeting of the minds" between the store and Mireles as to what product (title) the store was agreeing to transfer to Mireles. In sum, under the teachings of our Supreme Court, Mireles committed a nonconsensual felonious taking and, as a result, was properly convicted of robbery.
In urging that the judgment be reversed, our concurring and dissenting colleague argues that there is "no meaningful distinction between Williams [, supra , 57 Cal.4th 776, 161 Cal.Rptr.3d 81, 305 P.3d 1241 ] and this case"-"[i]n each case, the defendant pretended to pay for the product before absconding." (Conc. & dis. opn. post , at p. 915.) We disagree. There is not only a meaningful distinction between Williams and the instant case, but a case-defining one.
What distinguishes this case from Williams , supra , 57 Cal.4th 776, 161 Cal.Rptr.3d 81, 305 P.3d 1241, is precisely what distinguishes theft by larceny from theft by false pretenses. As discussed above, theft by false pretenses requires two elements which larceny does not: the consent of the lawful owner to the defendant taking the *245 property; and the lawful owner's reliance on the defendant's false representation. (Compare Davis , supra , 19 Cal.4th at p. 305, 79 Cal.Rptr.2d 295, 965 P.2d 1165 with *910 Williams , supra , 57 Cal.4th at p. 787, 161 Cal.Rptr.3d 81, 305 P.3d 1241.)
In Williams , supra , 57 Cal.4th 776, 161 Cal.Rptr.3d 81, 305 P.3d 1241, even though defendant's purchase of the gift cards was against company policy, Walmart nonetheless "permitted" or consented to the cards' sale. ( Id. at pp. 780, 792, 161 Cal.Rptr.3d 81, 305 P.3d 1241.) As our Supreme Court stated, "defendant did not commit larceny. Walmart, through its store employees, consented to transferring title to the gift cards to defendant." ( Id. at p. 788, 161 Cal.Rptr.3d 81, 305 P.3d 1241, italics added.) Here, in contrast, Home Depot did not willingly consent to sell to Mireles a $39.98 bottle of weed killer for $4.47. A merchant does not consent to the sale of an item where the ostensible purchaser has deceived the merchant as to what is the subject of the transaction.
Moreover, in Williams , supra , 57 Cal.4th 776, 161 Cal.Rptr.3d 81, 305 P.3d 1241, the lawful owner of the property consented to the transaction because it relied on defendant's false representations as to his legitimate capacity to pay; in contrast with the instant case, there was no misrepresentation as to what exchange was being transacted: the store voluntarily sold gift cards to the defendant. As our Supreme Court explained, "Defendant acquired ownership of the gift cards through his false representation, on which Walmart relied, that he was using valid payment cards to purchase the gift cards. Only after discovering the fraud did the store seek to reclaim possession." ( Id. at p. 788, 161 Cal.Rptr.3d 81, 305 P.3d 1241.) Here, Home Depot, in contrast to Walmart, did not rely on a false representation by Mireles at any point in the transaction. In the absence of either any consent by Home Depot to Mireles taking the weed killer from the store for only $4.47 or any reliance by Home Deport (or its agents) on any representation or pretense of Mireles, there could not have been a theft by false pretenses. The larceny began when Mireles removed the weed killer from the shelf and it continued until the time he was arrested. (See § 211; Davis , supra , 19 Cal.4th at p. 305, 79 Cal.Rptr.2d 295, 965 P.2d 1165 ; Williams , at p. 787, 161 Cal.Rptr.3d 81, 305 P.3d 1241 ; People v. Cooper (1991) 53 Cal.3d 1158, 1165, 282 Cal.Rptr. 450, 811 P.2d 742.) Accordingly, Mireles was properly charged with second degree robbery and, as discussed below, properly tried.
II. The trial court did not abuse its discretion
Mireles contends that the trial court erred with regard to three rulings. First, he argues that the court improperly excluded evidence of Bott's prior felony convictions. Second, Mireles maintains that the trial court should have excluded evidence of his past criminal conduct. Third, he insists that the trial court erred in failing to sanction the People for purportedly failing to disclose timely one of its rebuttal witnesses, Roth.
*246 We review each of these rulings for an abuse of discretion. ( People v. Rodriguez (1999) 20 Cal.4th 1, 9-10, 82 Cal.Rptr.2d 413, 971 P.2d 618 [evidentiary rulings]; People v. Ayala (2000) 23 Cal.4th 225, 299, 96 Cal.Rptr.2d 682, 1 P.3d 3 [decision to instruct on discovery abuse].) Under the abuse of discretion standard, we give "abundant deference to the trial court's rulings." ( People v. Jackson (2005) 128 Cal.App.4th 1009, 1018, 27 Cal.Rptr.3d 596.) A trial court's exercise of discretion will not be disturbed on appeal unless the court "exercised it in an arbitrary, capricious, or patently absurd manner resulting in a manifest miscarriage of justice." ( Baltayan v. Estate of Getemyan (2001) 90 Cal.App.4th 1427, 1434, 110 Cal.Rptr.2d 72.)
*911 "It is often said that a trial court's exercise of discretion will be reversed only if its decision is 'beyond the bounds of reason.' " ( Horsford v. Board of Trustees of California State University (2005) 132 Cal.App.4th 359, 393, 33 Cal.Rptr.3d 644.)
A. EXCLUSION OF BOTT'S PRIOR CONVICTIONS WAS PROPER
Before the first witness testified, at an Evidence Code section 402 hearing, the People brought to the trial court's attention that one of its witness, Bott, had previously suffered a number of convictions that arguably involved moral turpitude: a 1983 conviction for selling and/or transporting controlled substances ( Health & Saf. Code, § 11352 ); and two misdemeanor convictions in 1992 for "hit and run" and "petty theft."[3] The People moved to exclude evidence of Bott's convictions on the ground that they were "too remote in time" to be used by the defense for impeachment purposes. Over defense counsel's objection, the trial court agreed with the People, noting that the oldest conviction occurred 33 years before trial and the two 1992 convictions occurred 24 years earlier.
Although "[t]here is no consensus among courts as to how remote a conviction must be before it is too remote. [Citation.] ... [A] conviction that is twenty years old ... certainly meets any reasonable threshold test of remoteness." ( People v. Burns (1987) 189 Cal.App.3d 734, 738, 234 Cal.Rptr. 547.) Here, each of the convictions at issue was more than 20 years old. Moreover, there was no conviction for a crime of moral turpitude during the intervening 24 years between the date of the most recent convictions and Mireles's trial. (See People v. Beagle (1972) 6 Cal.3d 441, 453, 99 Cal.Rptr. 313, 492 P.2d 1 [a conviction from " 'long before' " should generally be excluded on the ground of remoteness if followed by a legally blameless life]; cf. Burns , at pp. 738-739, 234 Cal.Rptr. 547 [remoteness of a conviction "loses most of its *247 impact" if the witness has served a lengthy prison sentence and has spent limited time out of prison].) Accordingly, we hold that the trial court did not abuse its discretion in excluding Bott's convictions.
B. ADMISSION OF MIRELES'S PRIOR CONVICTIONS WAS PROPER
Mireles argues that the trial court abused its discretion when it refused to prevent the People from impeaching him with evidence of two thefts he committed in 2010 and 2012-respectively, five and three years before the instant offense.
At trial, before Mireles testified, defense counsel objected to the admission of her client's prior convictions, arguing that they were too remote in time. The trial court overruled the objection. In order to lessen the impact of these convictions on the jury, Mireles admitted to them on direct examination. On appeal, Mireles contends that his prior crimes were "barely probative and it gave the jury almost no additional information regarding [his] moral turpitude."
Our Supreme Court has stated that "[i]n considering whether to admit evidence of a prior felony conviction of a witness subject to impeachment concerning his or her credibility, the prominent factors in determining the probative value of the prior conviction include 'whether the conviction (1) reflects on honesty and (2) is near in time.' " ( *912 People v. Brooks (2017) 3 Cal.5th 1, 52, 219 Cal.Rptr.3d 331, 396 P.3d 480.) Theft "reflects dishonesty and is a crime involving moral turpitude." ( People v. Wheeler (1992) 4 Cal.4th 284, 289, 14 Cal.Rptr.2d 418, 841 P.2d 938.) Convictions for crimes similar to the charged offense occurring just three and five years before trial are neither remote in time ( People v. Burns , supra , 189 Cal.App.3d at p. 738, 234 Cal.Rptr. 547 ) nor unduly prejudicial. (See People v. Carter (2014) 227 Cal.App.4th 322, 330, 173 Cal.Rptr.3d 617 [admission of 11-year-old misdemeanor burglary and theft convictions "not unreasonable and within [trial court's] discretion"].) Accordingly, we hold that the trial court did not err in ruling that the Mireles's prior convictions were admissible.
C. THE FINDING OF NO DISCOVERY ABUSE WAS PROPER
During the defense's presentation of evidence, the People advised the trial court and Mireles's counsel that it intended to call two rebuttal witnesses, one of whom was Roth, the Home Depot employee who served as Reyes's approach witness as she followed and then confronted Mireles. Defense counsel objected to Roth on the ground of "unfair surprise"-Roth's name was not on the People's witness list and the defense had not had an opportunity to interview Roth before trial. The trial court overruled the *248 defense's objection for two principal reasons: First, Roth's name was "available, both sides could have contacted him [before trial]."[4] Second, there was no late discovery or "sandbagging" by the People, because the People only interviewed Roth the day before and immediately provided to the defense written notes of that interview. On appeal, Mireles argues that the trial court's ruling was in error because the People violated section 1054.1.
Section 1054.1 requires, among other things, that the prosecuting attorney provide the defense with the "names and addresses of persons [he or she] intends to call as witnesses at trial." ( § 1054.1, subd. (a).) Although section 1054.1 does not expressly specify that rebuttal witnesses are included, our Supreme Court has held that "the only reasonable interpretation" of the statute is that it "includes both witnesses in the prosecution's case-in-chief and rebuttal witnesses that the prosecution intends to call." ( Izazaga v. Superior Court (1991) 54 Cal.3d 356, 375, 285 Cal.Rptr. 231, 815 P.2d 304.) "Absent good cause, such evidence must be disclosed at least 30 days before trial, or immediately if discovered or obtained within 30 days of trial ." ( People v. Zambrano (2007) 41 Cal.4th 1082, 1133, 63 Cal.Rptr.3d 297, 163 P.3d 4, italics added.)
Here, the People interviewed Roth during trial and "immediately" provided the interview notes to the defense. There is no evidence of sandbagging by the People-that is, there is no evidence that the People intended to call Roth as a witness prior to interviewing him. Indeed, there is evidence that the People were fully prepared to go to trial without ever calling Roth. On June 10, 2016, more than a month before the People interviewed Roth, and after a jury had been selected, Mireles moved successfully for a mistrial due to the defense's difficulty in locating one of its witnesses. The People "strongly opposed" Mireles's motion for a mistrial, advising the trial court that the People "are ready to proceed today. We have our witnesses lined up."
Moreover, as courts have observed, "A trial is not a scripted proceeding. ... [D]uring the trial process, things change and the best laid strategies and expecta *913 tions may quickly become inappropriate : witnesses who have been interviewed vacillate or change their statements; events that did not loom large prospectively may become a focal point in reality . Thus, there must be some flexibility. After all, the ' "true purpose of a criminal trial" ' is ' "the ascertainment of the facts." ' [Citation.] After hearing a witness, the necessity of a rebuttal witness may become more important ." ( People v. Hammond (1994) 22 Cal.App.4th 1611, 1624, 28 Cal.Rptr.2d 180, italic added.) The record below indicates that the state initially did not believe Roth was necessary for its prosecution of Mireles, then, as the trial unfolded, changed its mind about Roth, interviewed him, and immediately thereafter *249 provided the interview notes to the defense. Such conduct did not violate either the letter or the spirit of section 1054.1.
Moreover, even assuming that the trial court did err with respect to Roth, it is not reasonably probable that Mireles would have obtained a more favorable result. ( People v. Watson , supra , 46 Cal.2d at p. 836, 299 P.2d 243.) First, Mireles admitted on the stand that he had stolen the weed killer. Second multiple witnesses testified that Mireles used force or fear in an attempt to carry off the weed killer. Reyes testified that when she confronted Mireles he became aggressive with her, "cursing" at her and then swinging a closed fist at her. Bott testified that he saw Mireles take a "full swing" at Reyes, which prompted him to intervene.[5] Even Mireles's own witness, Brandon Washington, told the police that he saw Mireles pull away from Reyes and put his hands on her. In short, apart from Roth's testimony, there was strong evidence of Mireles's guilt beyond a reasonable doubt of robbery.
D. NO CUMULATIVE EFFECT
Mireles further contends that the cumulative effect of the alleged errors deprived him of his federal due process right to a fair trial.
"Under the cumulative error doctrine, the reviewing court must 'review each allegation and assess the cumulative effect of any errors to see if it is reasonably probable the jury would have reached a result more favorable to defendant in their absence.' " ( People v. Williams (2009) 170 Cal.App.4th 587, 646, 88 Cal.Rptr.3d 401.) "The 'litmus test' for cumulative error 'is whether defendant received due process and a fair trial.' " ( People v. Cuccia (2002) 97 Cal.App.4th 785, 795, 118 Cal.Rptr.2d 668.)
We have found no errors.
DISPOSITION
The judgment is affirmed
I concur:
ROTHSCHILD, P.J.

All further statutory references are to the Penal Code unless otherwise indicated.

"Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." (§ 211, italics added.)

The People also noted that in 2001 Bott was convicted for obstruction of justice and resisting arrest (§ 148, subd. (a)(1) ). During trial, counsel for Mireles argued that that particular conviction was not a crime of moral turpitude. Consequently, Mireles has waived his argument on appeal with respect to that conviction.

Reyes mentioned Roth by name during her testimony at the preliminary hearing.

Roth testified that Mireles swung at Reyes twice.